**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND  (GREENBELT)**

---

VELMA M. MELTON,　　　　　　　　　　CASE NO.　　8:19-cv-00209-TDC
　　　　Plaintiff,

　　vs.

SELECT PORTFOLIO SERVICING, INC.;
STERLING, INC. dba JARED-GALLERIA
OF JEWELRY; PRESTIGE FINANCIAL
SERVICES, INC.; EXPERIAN INFORMATION
SOLUTIONS, INC.; EQUIFAX INFORMATION
SERVICES, LLC; and TRANS UNION, LLC;
　　　　Defendants.

---

**TRANS UNION, LLC'S ANSWER TO PLAINTIFF'S COMPLAINT**
**AND AFFIRMATIVE DEFENSES**

---

Trans Union, LLC ("Trans Union"), by counsel, responds to Plaintiff's Complaint (the "Complaint") as follows.  For the Court's convenience, Plaintiff's allegations are set forth verbatim with Trans Union's responses immediately following.

## PRELIMINARY STATEMENT

1.　　　With the digitization of our world Americans have witnessed a revolutionary increase in the accumulation and processing of data of their personal and financial information.  The data revolution has become an integral part of our lives and has benefited us all in countless ways.

**ANSWER:**　　As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under

Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

2.      As we enjoy the benefits of these technological advances, custodians of this data must remain mindful of the substantial economic and emotional harm that often results when this information is mishandled or misused.  Examples of such mishandling include when inaccurate information is disseminated and/or obtained about an American consumer.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

3.      Companies commonly known as consumer reporting agencies ("CRAs") have benefited immensely from these advances in the area of data technology allowing them to accumulate and sell American consumers credit histories and personal information.

**ANSWER:**   As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

4.      These CRAs sell to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers and similar interested parties) information, commonly known as "consumer reports."

Concerning individuals who may be applying for retail credit, for the lease of an apartment, for a car or mortgage loan, for employment or the like.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

6.     Requiring CRAs to assure the "maximum possible accuracy" of consumer information is crucial to the stability of our banking system to wit:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

See 15 U.S.C. § 1681(a)(1).

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

7.     The preservation of one's good name is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage to buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed (emphasis added).

Bryant v. TRW, Inc., 689 F.2d72,79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 1970)].

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

8.     To further the primary goal of greater accuracy, the FCRA also requires CRAs, as well as "furnishers" of credit information to the CRAs, among many other duties, to conduct "reasonable investigations" into disputes lodged to CRAs by consumers claiming to have inaccurate or incomplete information appearing to their credit reports, to correct or update any such errors or omissions, and to report back to the consumers the results of their investigations.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

9.     This action seeks, compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff Velma M. Melton against Select Portfolio Servicing, Inc.; Sterling, Inc., dba Jared-Galleria of Jewelry; Prestige Financial Services, Inc.; Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union, LLC for violation of common law and for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein and asserts additional claims against Select Portfolio Servicing, Inc. and Sterling, Inc. under common law.

**ANSWER:** Trans Union denies that it violated the FCRA (or any other law). Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union. Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## JURISDICTION

10. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p) and 28 U.S.C. § 1367.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

## PARTIES

11. The Plaintiff is a natural person and resident of the State of Maryland. She is a "consumer" as defined by 15 U.S.C. § 1681a(c).

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

12. Select Portfolio Services, Inc. (hereafter "SPS") is a corporation incorporated under the laws of the State of Utah and is authorized to do business in the State of Maryland.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

13. Sterling, Inc. dba Jared-Galleria of Jewelry (hereafter "Jared") is a corporation incorporated under the laws of the State of Ohio and is authorized to do business in the State of Maryland.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

14. Prestige Financial Services, Inc. (hereafter "Prestige") is a corporation incorporated under the laws of the State of Utah and is authorized to do business in the State of Maryland.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

15. Experian Information Solutions, Inc. (hereafter "Experian") is a corporation incorporated under the laws of the State of Ohio and is authorized to do business in the State of Maryland.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

16. Equifax Information Services, LLC (hereafter "Equifax") is a private limited company formed under the laws of the State of Georgia and is authorized to do business in the State of Maryland.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

17. Trans Union, LLC (hereafter "Trans Union") is a private limited company formed under the laws of the State of Delaware and is authorized to do business in the State of Maryland.

**ANSWER:** Trans Union admits that it is a Delaware limited liability company with its principal place of business in Chicago, Illinois. Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

18. Experian, Equifax and Trans Union are each a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). Experian, Equifax and Trans Union are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681(d) to third parties.

**ANSWER:** Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

19. Experian, Equifax and Trans Union disburse such consumer reports to third parties under contract for monetary compensation.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

## FACTUAL ALLEGATIONS

20. Credit-reporting agencies collect information from furnishers like SPS, Jared, Prestige, other creditors, governmental entities, collection agencies and third-party intermediaries. They generally collect data every month, and they typically update their credit records within one to seven days after receiving new information. To facilitate the collection process and to reduce reporting costs, the CRAs have implemented procedures to have data submitted in a standard format, the so-called Metro format. Data may be submitted through various media, including CD-ROM and electronic data transfer. Furnishers like SPS, Jared and Prestige submit information voluntarily. No state or federal law requires them to report data to the CRAs or to use a particular format for their reporting. As a result, the completeness and frequency of reporting by furnishers can vary.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

21.     A credit score is a number that summarizes credit risk, based on a snapshot of a consumer's credit report at a particular point in time.  Credit bureau based scores have been available since 1989 when Fair Isaac and Company, installed its first "FICO" score at Equifax.  Credit scores summarize the information on a consumer's credit report.  The score is designed to be predictive of credit risk and is used by lenders and insurance companies.  FICO scores, which are the industry standard, are calculated from different credit data variable groups.

**ANSWER:**     As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

22.     Every day thousands of consumer disputes are received and processed by the National CRAs: Equifax, Trans Union and Experian.  These disputes are received via phone, mail or online through the Internet.  Each credit-reporting agency is obligated by the FCRA to conduct a reasonable investigation of the disputed item(s).

**ANSWER:**     Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).  23.

The bureaus and the data furnishers are obligated under the FCRA to ensure that they have reasonable procedures in place to ensure maximum possible accuracy of the credit file data.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

24. When a consumer contacts the credit bureaus, the bureau will typically send an Automated Consumer Dispute Verification form (hereafter "ACDV") electronically through a system called e-Oscar, to the data furnisher for verification of the item in question.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

25. The e-Oscar system was developed by Equifax, Experian, Innovis and Trans Union and purports to be an "Online Solution for Complete and Accurate Reporting."

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

26. Upon receiving the ACDV through e-Oscar, the furnisher is required to conduct its own investigation and send a response back to the CRAs. The dispute can be verified as reported, changed/updated or deleted.

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

27. The results of the investigation are then updated on the credit report by the CRAs and either mailed or emailed back to the consumer. This process can take up to 30-45 days to complete but it typically takes less than 30.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

28. Either because of time, cost, or volume of disputes, the CRA's have adopted an investigation procedure that involves condensing a consumer's dispute to a 2 to 3 digit code that is sent electronically to the data furnisher. Sometimes, the CRA's also provide images of the actual dispute letter sent by the consumer to the CRAs.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

29. Unfortunately, the data furnisher almost always performs its investigation based only on this 2 or 3 digit code and quickly verifies its previous data to the CRA's without performing any real

investigation. In fact, these investigations are often conducted in under three minutes by low level back office employees who are often compensated based upon the number of disputes they can process per day.

**ANSWER:** As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

30. The CRAs then rely solely on the results of the data furnisher's investigation without performing any independent investigation.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

31. This investigation method is known as "parroting" and no independent analysis, evaluation or reasonable investigation is ever performed by the CRAs.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

32. SPS, Jared and Prestige are "furnishers" and regularly furnish information about consumers, including the Plaintiff, to CRAs including, Equifax, Experian, Trans Union and Innovis.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

33. Within two years prior to the filing of this lawsuit, Plaintiff repeatedly requested and received copies of the credit file of the Plaintiff compiled and maintained by Equifax, Experian and Trans Union.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

34. Each credit report received by the Plaintiff contained errors and each CRA furnished Plaintiff's credit reports to 3rd party credit granting entities after receiving her disputes.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

## a. EXPERIAN INACCURACIES

35. Two of the most egregious inaccuracies reported by Experian were furnished by SPS and Jared.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

36.     The inaccuracy furnished by SPS and reported by Experian was that Plaintiff had an open mortgage loan with a balloon payment of $220,580.00 due in 2036.  This information was inaccurate because Plaintiff satisfied and paid in full this account as part of a sale transaction on or about November 30,2015.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

37.     Plaintiff disputed the SPS inaccuracy with Experian multiple times.  Plaintiff's letters disputing this inaccuracy were either mailed or faxed to Experian.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

38.     Experian's response to Plaintiff's first and second dispute letter was to simply-inform her that the information had been verified as accurate.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

39.     Experian's response to Plaintiff's third dispute letter was to actually add a past due balance of $25,806 and total balance owed of $329,928 to the account information included on the report.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

40.     Plaintiff disputed the SPS inaccuracy contained in the Experian report directly with SPS multiple times.  Plaintiff disputed the SPS inaccuracy in the Experian report directly with SPS via a phone call on December 5, 2018.  Plaintiff subsequently disputed the SPS inaccuracy in the Experian report

directly with SPS again via email on December 5, 2018. SPS never responded to Plaintiff's phone and email disputes.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

41.     SPS failed to correct the egregious inaccuracies it furnished to Experian.

**ANSWER:**     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

42.     The inaccuracy furnished by Jared in the Experian report was that Plaintiff had an unpaid charge off balance. The information furnished by Jared was inaccurate and misleading because it did not reflect that Plaintiff paid Jared directly and settled the account for less than the full balance on or about March 29, 2017.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

43.     Plaintiff disputed the Jared inaccuracy with Experian multiple times. Two of the letters Plaintiff sent disputing this inaccuracy were sent in June 2017 and November 2018.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

44.     Experian's response to all three of Plaintiff's disputes regarding the Jared inaccuracy was to simply inform her that the information had been verified as accurate.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

45.    Upon the Plaintiff's request for verification and correction of the SPS and Jared inaccuracies, and in accordance with their standard procedures, Experian did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially or reasonably investigate the disputed inaccuracies.

**ANSWER:**    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

46.    It is alleged that that Experian failed to contact SPS and Jared.  Alternatively, it is also alleged that Experian did forward some notice of the disputes to SPS and Jared and both SPS and Jared failed to conduct their own lawful investigations.

**ANSWER:**    Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

47.    The SPS and Jared inaccuracies are damaging and derogatory items on the Plaintiff's Experian credit report.

**ANSWER:**    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

**b. EQUIFAX INACCURACIES**

48.    Two of the most egregious inaccuracies reported by Equifax were furnished by Jared and Prestige.

**ANSWER:**    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

49.     The inaccuracy furnished by Jared and reported by Equifax was that Plaintiff had an unpaid charge off balance.  The information furnished by Jared was inaccurate and misleading because it did not reflect that Plaintiff paid Jared directly and settled the account for less than the full balance on or about March 29, 2017.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

50.     Plaintiff disputed the Jared inaccuracy with Equifax multiple times.  Two of the letters Plaintiff sent disputing this inaccuracy were sent in June 2017 and November 2018.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

51.     Equifax's response to Plaintiff's first and second dispute of the Jared inaccuracy was to simply inform her that the information had been verified as accurate.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

52.     Equifax simply did not respond to Plaintiff's most recent dispute of the Jared inaccuracy.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

53.     The inaccuracy furnished by Prestige and reported by Equifax was that Plaintiff had two delinquent Prestige accounts.  This was inaccurate because Plaintiff only ever had one account with Prestige.  The second account was an inaccurate duplicate.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

54.     Plaintiff disputed the Prestige inaccuracy with Equifax multiple times.  The most recent dispute was mailed to Equifax in November 2018.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

55.     Equifax simply did not respond to Plaintiff's most recent dispute of the Prestige inaccuracy.

**ANSWER:**     Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

56.     Upon the Plaintiff's request for verification and correction of the Jared and Prestige inaccuracies, and in accordance with its standard procedures, Equifax did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially, or reasonably verify the Jared and Prestige disputed inaccuracies.

**ANSWER:**     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

57.     It is alleged that Equifax failed to contact Jared and Prestige.  Alternatively, it is also alleged that Equifax did forward some notice of the disputes to Jared and Prestige and both Jared and Prestige failed to conduct their own lawful investigations.

**ANSWER:**     Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

58.     The Jared and Prestige inaccuracies are damaging and derogatory items on the Plaintiff's Equifax credit report.

**ANSWER:**    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

## c. TRANS UNION INNACURACY

59.    The most egregious inaccuracy reported by Trans Union was furnished by Jared.

**ANSWER:**    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

60.    The inaccuracy furnished by Jared and reported by Trans Union was that Plaintiff had an unpaid charge off balance.  The information furnished by Jared was inaccurate and misleading because it did not reflect that Plaintiff paid Jared directly and settled the account for less than the full balance on or about March 29, 2017.

**ANSWER:**    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

61.    Plaintiff disputed the Jared inaccuracy with Trans Union multiple times.  Two of the letters Plaintiff sent disputing this inaccuracy were sent in June 2017 and November 2018.

**ANSWER:**    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

62.     Trans Union's response to all of Plaintiff's disputes of the Jared inaccuracy was to simply inform her that the information had been verified as accurate.

**ANSWER:**     Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

63.     Upon the Plaintiff's request for verification and correction of the Jared inaccuracy, and in accordance with its standard procedures, Trans Union did not evaluate or consider any of Plaintiff's information, claims or evidence and did not make any attempt to substantially, or reasonably verify the Jared disputed inaccuracy.

**ANSWER:**     Trans Union denies the allegations contained in this paragraph.

64.     In the alternative to the allegation that Trans Union failed to contact Jared, it is alleged that Trans Union did forward some notice of the disputes to Jared and Jared failed to conduct its own lawful investigation.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

65.     The Jared inaccuracy is a damaging and derogatory item on the Plaintiff's Trans Union credit report.

**ANSWER:**     Trans Union denies that it violated the FCRA (or any other law). Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

66.     The Plaintiff realleges and incorporates paragraphs 1 through 65 above as if sully set out herein.

**ANSWER:**     Trans Union reasserts its answers and responses set forth herein.

67.     A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

See 15 U.S.C. § 1681a(f).

**ANSWER:**     Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

68.     Experian, Equifax and Trans Union are each a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

**ANSWER:**     Trans Union admits that it is a "consumer reporting agency" as that term is defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*  Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

69.     Section 1681n of the FCRA imposes civil liability on any CRA "who willfully fails to comply with any requirement" of the Act. See 15 U.S.C. § 1681n(a).  Any person who willfully fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, statutory damages, punitive damages, costs of the action, and reasonable attorneys' fees. [sic] Id. at § 1681n(a)(1)-(3).

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

70.     Section 16810 of the FCRA provides for civil liability against any CRA which is negligent in failing to comply with any requirement imposed under the Act.  See 15 U.S.C. § 16810.  Any person who negligently fails to comply with any requirement of the FCRA is liable to the consumer for actual damages, costs of the action, and reasonable attorneys' fees. [sic] Id. at § 1681o(a)(1)-(2).

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

71.     The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." See 15 U.S.C. § 1681e(b).

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

72.     When Experian, Equifax and Trans Union receive a dispute from a consumer, their "investigation" procedure involves little more than condensing the consumer's dispute to a two-digit code that gets transmitted electronically to the furnisher of the disputed information for comparison with the furnisher's own information.

**ANSWER:** Trans Union denies that it violated the FCRA (or any other law).  As Plaintiff's remaining allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union

states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

73.     Experian, Equifax and Trans Union do no independent or further "investigation" of the substance of the consumer's dispute.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

74.     This method of investigation is known as "parroting" of information, and has been rejected routinely by courts throughout the country.

**ANSWER:**     Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

75.     Making matters worse, Experian, Equifax and Trans Union have a policy and/or procedure not to investigate a dispute lodged by a consumer if the subject of the dispute has been "investigated" by them previously.  In other words, upon receipt of a consumer's dispute, Experian, Equifax and Trans Union first step is to check whether the subject of the dispute has previously been "investigated," *i.e.,* whether a two-digit code has previously been sent to the furnisher of the information to check whether the data matches.  If it has, Experian, Equifax and Trans Union often refuse to do any sort of investigation into the consumer's dispute whatsoever.

**ANSWER:**     As Plaintiff's allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under

Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

76.     A procedure aimed at the expeditious elimination of work for Experian, Equifax and Trans Union instead of the accuracy of the underlying information is patently unreasonable or runs an unjustifiably high risk of violating the FCRA § 1681i.

**ANSWER:**     Trans Union denies that is employs a "procedure aimed at the expeditious elimination of work for Experian, Equifax and Trans Union instead of accuracy." Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

77.     Moreover, the FCRA envisions the investigation process to involve both the CRA *and* the furnisher of the information. With two (2) separate entities involved, both of whom have distinct responsibilities to conduct a reasonable investigation, *see* 15 U.S.C. § 1681i and § 1681s-2b, the consumer has greater protection that inaccurate information will be corrected as quickly as possible.

**ANSWER:**     Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

78.     Because of the repeat dispute procedure, the consumer loses that protection. Experian, Equifax and Trans Union unilaterally determine that the furnisher of the disputed information will not even be contacted to conduct its own investigation.

**ANSWER:**     Trans Union denies the allegations contained in this paragraph. As Plaintiff's remaining allegations are stated and absent a proper definition of the terms employed Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union

states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

79.     While the FCRA allows a consumer to pursue a cause of action against a furnisher who fails to conduct a reasonable investigation of a consumer's dispute, the furnisher ***must*** receive notification from the CRA, not the consumer, as a pre-requisite to the cause of action. *See* 15 U.S.C. § 1681s-2b.

**ANSWER:**     Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

80.     As described above, Experian, Equifax and Trans Union willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information they circulated about Plaintiff.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

81.     As a direct and proximate result of the failures of Equifax, Experian and Trans Union, Plaintiff has suffered economic and non-economic loss in specific amounts to be proved at trial.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

82.     As a direct and proximate result of the failures of Experian, Equifax and Trans Union, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

83.     As a direct and proximate result of the willful and/or negligent refusal of Experian, Equifax and Trans Union to adopt and/or follow reasonable procedures as mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to, financial loss, lost credit opportunity, expenditure of time and resources, ***risk to her security clearance*** and mental anguish, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15. [sic] U.S.C. § 1681o.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

84.     The continued refusal of Experian, Equifax and Trans Union to adopt and/or allow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff.  The injuries suffered by the Plaintiff are attended by circumstances of fraud, malice, and willful and wanton misconduct entitling the Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

85. Experian, Equifax and Trans Union violated 15 U.S.C § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they published and maintain concerning the Plaintiff.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT II
## VIOLATION OF 15 U.S.C. § 1681i BY EXPERIAN, EQUIFAX and TRANS UNION

86. Plaintiff realleges and incorporates paragraphs 1 though [sic] 85 above as if fully set out herein.

**ANSWER:** Trans Union reasserts its answers and responses set forth herein.

87. The FCRA mandates that a CRA conduct a investigation of the accuracy of the information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

**ANSWER:** Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

88.     The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(s)(A).

**ANSWER:**     Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

89.     The FCRA allows a CRA to terminate an investigation "if the agency reasonably determines that the dispute by the consumer is frivolous or irrelevant, including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information." *See* 15 U.S.C. § 1681i(a)(3)(A).  However, the FCRA mandates that "[u]pon making any determination in accordance with subparagraph (A) that a dispute is frivolous or irrelevant, a consumer reporting agency shall notify the consumer of such determination not later than 5 business days after making such determination." See 15 U.S.C. § 1681i(a)(3)(B).

**ANSWER:**     Trans Union states that the allegations of this paragraph are legal conclusions and, so stating, denies them.

90.     Experian, Equifax and Trans Union violated 15 U.S.C § 1681i by failing to delete inaccurate information in the Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to the appropriate furnisher by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

91. Experian, Equifax and Trans Union willfully and/negligently failed to conduct *any* investigation, let alone a reasonable investigation, of Plaintiff's dispute in violation of 15 U.S.C. § 1681i(a)(1).

**ANSWER:** Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

92. Upon information and belief, at no point in their reviews of Plaintiff's dispute did Experian, Equifax and Trans Union make a determination that the dispute was frivolous or irrelevant.

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

93. Experian, Equifax and Trans Union certainly did not advise the Plaintiff that the Plaintiff's dispute had been determined to be frivolous or irrelevant as expressly required by 15 U.S.C. § 1681i(a)(3)(B).

**ANSWER:** Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a

denial under Rule 8(b)(5). Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5). Trans Union states that the remaining allegations of this paragraph are legal conclusions and, so stating, denies them.

94.     As a direct and proximate result of the refusal to conduct a reasonable investigation by Experian, Equifax and Trans Union, Plaintiff has suffered economic and noneconomic loss.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

95.     As a direct and proximate result of the disregard by Experian, Equifax and Trans Union for Plaintiff's disputes and the importance of the Plaintiff's good name and credit rating, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability to the average consumer.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

96.     As a direct and proximate result of the willful and/or negligent refusal by Experian, Equifax and Trans Union to conduct a reasonable investigation as mandated by the FCRA and as outlined above, Plaintiff has suffered other loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to

an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

97.     The continued refusal by Experian, Equifax and Trans Union to adopt and/or follow reasonable procedures as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff.   The injuries suffered by the Plaintiff is attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to statutory damages, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(2).

**ANSWER:**     Trans Union denies the allegations of this paragraph as they apply to Trans Union. Trans Union denies that the remaining statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT III
## VIOLATION OF 15 U.S.C. § 1681s-2Cb) BY SPS, JARED and PRESTIGE

98.     Plaintiff realleges and incorporates paragraphs 1 through 97 above as if fully set out herein.

**ANSWER:**     Trans Union reasserts its answers and responses set forth herein.

99.     SPS violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the patently inaccurate SPS representation to Experian; by failing to fully and properly investigate the Plaintiff's dispute of the SPS representation described above; by failing to review all relevant information

regarding the same; by failing to accurately respond to Experian; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the SPS representations to Experian.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

100. Jared violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the patently inaccurate Jared representation to Experian, Equifax and Trans Union; by failing to fully and properly investigate the Plaintiff's dispute of the Jared representation described above; by failing to review all relevant information regarding the same; by failing to accurately respond to Experian, Equifax and Trans Union; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Jared representations to Experian, Equifax and Trans Union.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

101. Prestige violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to report the inaccurate and misleading duplicate Prestige account to Equifax; by failing to fully and properly investigate the Plaintiff's dispute of the duplicate Prestige representation described above; by failing to review all relevant information regarding the same; by failing to accurately respond to Equifax; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the duplicate Prestige account to Equifax.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

102. As a direct and proximate result of this conduct, action and inaction of SPS, Jared and Prestige, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

103. The conduct, action and inaction of SPS, Jared and Prestige was willful, rendering SPS, Jared and Prestige liable for actual or statutory, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, SPS, Jared and Prestige were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

104. The Plaintiff is entitled to recover costs and attorneys' fees from SPS, Jared and Prestige in an amount to be determined by the Court pursuant to 15. [sic] U.S.C. § 1681n and § 1681o.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

## COUNT IV
## DEFAMATION BY SPS

105.    Plaintiff realleges and incorporates paragraphs 1 through 104 above as if fully set out herein.

**ANSWER:**    Trans Union reasserts its answers and responses set forth herein.

106.    As part of a sale transaction on or about November 30, 2015, SPS received a full payment on the account they continued to report as open and with an outstanding delinquent balance as recently as November 29, 2018.

**ANSWER:**    Trans Union states that it lacks knowledge or information at this time sufficient to form a belief about the truth of these allegations as they apply to Trans Union, which has the effect of a denial under Rule 8(b)(5).  Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations, which has the effect of a denial under Rule 8(b)(5).

107.    Not only did SPS accept the $364,042.63 payment but they subsequently issued a Certificate of Satisfaction or Release of Lien against the property further demonstrating they were fully aware that the account had been satisfied.

**ANSWER:**    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

108.    Additionally, SPS was notified on at least **four (4)** additional occasions that the information they were reporting to Experian was egregiously inaccurate.  These notifications were provided to SPS in May of 2017, November of 2018 and twice in December 2018.  Plaintiff notified SPS of the inaccuracy via certified mail, phone and email.

**ANSWER:**    Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

109. Not only did SPS fail to correct its reporting but it made matters worse by increasing the inaccurate balance of $220,580.00 to $329,928.00.

**ANSWER:** Trans Union states that it lacks knowledge or information sufficient to form a belief about the truth of these allegations, which has the effect of a denial under Rule 8(b)(5).

110. Notwithstanding that it had actual knowledge of the inaccuracies, SPS falsely represented to Experian that the SPS representation was true when it was in fact false and misleading.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

111. Within one year of the filing of this Complaint SPS published false and misleading information claim that Plaintiff had an open mortgage account with a delinquent balance owed to SPS.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

112. The defamation was willful and with malice. SPS had actual knowledge that the Plaintiff was not legally responsible to pay any amount for the account reported in the SPS representation because it issued a Certificate of Satisfaction or Release of Lien for the subject mortgage account. SPS's issuance of a Certificate of Satisfaction or Release of Lien clearly demonstrates SPS had actual knowledge that it received the full payment of the loan balance.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

113. SPS also had substantial evidence by which to have verified that the SPS representation about the mortgage account was not accurate. SPS willfully decided to ignore the settlement document that was emailed to and confirmed received by SPS which confirm the mortgage account had been satisfied. Specifically, no one form SPS ever reviewed the documents attached to the email sent to them on December 5, 2018.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

114. As a direct and proximate result of this conduct, action and inaction of SPS, Plaintiff has suffered loss and damage including, but not limited to, financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress, entitling her to an award of actual damages in amounts to be proved at trial.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

115. The defamation, conduct and actions of SPS were willful, deliberate, intentional and/or with reckless disregard for the interests and rights of Plaintiff such as to justify an award of punitive damages against SPS in an amount to be determined by the Court.

**ANSWER:** Trans Union denies that the statements contained in this paragraph require a response from Trans Union as they do not constitute allegations asserted against it, pursuant to Rule 8(b)(1)(B), and thus are considered denied or avoided under Rule 8(b)(6).

WHEREFORE, Plaintiff, Velma M. Melton, respectfully prays for a judgment against Defendants as follows:

a.   Actual damages sustained in an amount in excess of $75,000.00 and statutory damages of not less than $100 and not more than $1,000 for violations of the FCRA;

b.   Such amount of punitive damages as the Court may allow for violations of the FCRA;

c.   The cost of the action together with reasonable attorneys' fees as determined by the Cout [sic];

d.   Such other and further relief as may be just and proper.

**ANSWER:**   Trans Union denies that Plaintiff is entitled to any damages, costs, fees or other relief from or against Trans Union.

## JURY TRIAL DEMAND

Velma M. Melton hereby demands a jury trial by jury on all issues in this action, except for any issues relating to the amount of statutory damages, attorney's fees and litigation costs.

**ANSWER:**   Trans Union denies that the statements contained in this paragraph require a response from Trans Union.

## AFFIRMATIVE DEFENSES

1.   Plaintiff has failed to state a claim against Trans Union upon which relief may be granted.

2.   Plaintiff's state law and common law claims are pre-empted by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq.

3.   Trans Union's reports concerning Plaintiff were true or substantially true.

4.   Trans Union has at all times followed reasonable procedures to assure maximum possible accuracy of its credit reports concerning Plaintiff.

5.      Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

6.      Plaintiff's claims are barred, in whole or in part, by 15 U.S.C. §§ 1681h(e) and/or 1681t.

7.      At all relevant times, Trans Union acted within the absolute and qualified privileges afforded it under the FCRA, the United States Constitution, applicable State Constitutions and the common law.

8.      Plaintiff's claims are barred, in whole, or in part, by the equitable theories of estoppel, waiver and laches.

9.      Plaintiff has failed to take reasonable steps to mitigate her damages, if any.

10.     Plaintiff's damages are the result of acts or omissions committed by Plaintiff.

11.     Plaintiff's damages are the result of acts or omissions committed by the other parties over whom Trans Union has no responsibility or control.

12.     Plaintiff's damages are the result of acts or omissions committed by non-parties to this action over whom Trans Union has no responsibility or control.

13.     Any claim for exemplary or punitive damages asserted by Plaintiff violates Trans Union's rights under the Due Process and Excessive Fines clauses of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and the analogous provisions of applicable State Constitutions and under the First Amendment of the United States Constitution and the analogous provisions of applicable State Constitutions.

14.     Trans Union reserves the right to assert additional defenses as may become apparent through additional investigation and discovery.

WHEREFORE, Defendant Trans Union, LLC, by counsel, denies that Plaintiff is entitled to judgment or to any of the relief sought, and respectfully requests that judgment be entered in its favor and

against Plaintiff on all counts set forth in the Complaint, and that Trans Union, LLC, be awarded its costs

incurred in defending this action, along with such other relief as this Court deems equitable and just.

Respectfully submitted,

/s/ Robert J. Schuckit
Robert J. Schuckit, Esq. (MD Federal Bar #14125)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN  46077
Telephone:  (317) 363-2400
Fax:  (317) 363-2257
E-Mail:  rschuckit@schuckitlaw.com

*Counsel for Defendant Trans Union, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been filed electronically on the **15th day of February, 2019**. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing.

| | |
|---|---|
| Kevin C. Williams, Esq.<br>titlelaw@gmail.com | |

The undersigned further certifies that a true copy of the foregoing was served on the following parties via First Class, U.S. Mail, postage prepaid, on the **15th day of February, 2019**, properly addressed as follows:

| | |
|---|---|
| None. | |

*/s/ Robert J. Schuckit*
Robert J. Schuckit, Esq. (MD Federal Bar #14125)
Schuckit & Associates, P.C.
4545 Northwestern Drive
Zionsville, IN 46077
Telephone: (317) 363-2400
Fax: (317) 363-2257
E-Mail: rschuckit@schuckitlaw.com

*Counsel for Defendant Trans Union, LLC*