## UNITED STATES DISTRICT COURT
### *for* THE DISTRICT OF MARYLAND

VELMA M. MELTON

     Plaintiff,

                                    Case No. 8:19-cv-00209-TDC

v.

SELECT PORTFOLIO SERVICING, INC. *et al*.,

     Defendant.

### PLAINTIFF VELMA M. MELTON'S OPPOSITION TO DEFENDANT STERLING JEWELERS INC.'S MOTION TO DISMISS

COMES NOW, Plaintiff, Velma M. Melton, by and through undersigned counsel, submits her opposition to Defendant Sterling Jewelers Inc.'s ("Sterling") Motion to Dismiss the complaint for lack of personal jurisdiction, and in support thereof states:

## I.      INTRODUCTION.

How does one come into a state, set up 50 retail stores, register a business, reserve several names, engage in a massive marketing plan to solicit the residents of the state, but then claim the state has no jurisdiction to hear the resident's claims against that entity? The question is rhetorical. Or is it? You would think so. But a defendant in this action, Sterling, has claimed just that. Of all the defendants in this action, the last defendant one would expect to file such a motion would be Sterling (Jared), because of its brand and presence in Maryland. Nonetheless, Sterling has filed this instant motion to dismiss for lack of personal jurisdiction. In a very, very constrained interpretation of cases with substantially different fact patterns, Sterling argues that personal jurisdiction is not proper because the complained of act did not occur in Maryland and does not relate to Sterling's activities in Maryland. The argument has no merit. Sterling admits that it has substantial retail business operations in Maryland and admits the falsely reported debt arose from merchandise purchased and financed from Sterling's retail store in Waldorf, Maryland. Because Sterling's false reporting of the debt relates to its business activity in Maryland, personal jurisdiction over Sterling is proper in this forum.

1

## II.     FACTS PERTINENT TO PERSONAL JURISDICTION

Plaintiff Melton is now, and has been at all times relevant to this action, a resident of the State of Maryland. *See* Am. Compl. ¶ 11. Sterling, a Delaware corporation and principally placed in Ohio, is a chain retail store with physical locations throughout the United States, including at least 50 retail stores in Maryland. Id. ¶ 13(b). From their retail stores, Sterling sells jewelry to customers patronizing its stores. Sterling also finances purchases of jewelry for customers by entering into financing contracts. In order to attract and bring in Maryland customers, Sterling engages in an elaborate marketing campaign that is directed at Maryland residents and/or customers. Id. ¶ 13(a). Sterling has registered its business with Maryland's Department of Assessments and Taxation and appointed a resident agent – The Corporation Trust, Incorporated – to accept process of service in Maryland on its behalf. Additionally, Sterling has reserved several tradenames under the name or some iteration of Jared-Galleria of Jewelry. Id. ¶¶ 9, 13. Presumably, Sterling is licensed to conduct business in Maryland and enjoys a substantial income from its extensive operations in the state. Id. ¶ 13(a).

One of its many locations in Maryland, is a retail store located in the city of Waldorf. Ms. Melton visited the Waldorf store in April 2015. *See* Melton Decl. ¶3. While at the store, she purchased a custom-made ring. Id. ¶4. To make the purchase, Melton opened a line of credit with Sterling to finance the purchase. Id. ¶5. As part of the financing process, Ms. Melton signed a contract that required her to pay the purchase price and interest. Id. ¶6. Before the purchase was paid off, Ms. Melton experienced financial difficulties and defaulted on her payments. Id. ¶7. After her default, Sterling contacted Melton in Maryland by calling her phone number to speak with her about paying the debt. Id. ¶8. Also, as part of its' collection efforts, Sterling began reporting the default to the Big Three credit bureaus – Equifax, Experian and Transunion. Shortly thereafter, Melton and Sterling came to an agreement that she would pay a certain amount on the outstanding balance and that Sterling would consider the account paid. Id. ¶9. Sterling memorialized the agreement in a document titled

"Final Settlement Offer Before Charge-Off" and mailed the document to Melton's home address in Hyattsville, Maryland. Id. ¶10. As part of the agreement, Melton authorized Sterling to access her Navy Federal Credit Union account (located in Maryland) to obtain the agreed upon payment. Id. ¶¶11 & 13. On March 29, 2017, Sterling accessed Melton's account to obtain the funds for the agreed upon payment. Id. ¶12

Notwithstanding their agreement, Sterling charged-off the account, and eventually sold it to a debt collector and reported that information to the Big Three credit bureaus. When she discovered such reporting, Plaintiff Melton disputed it with the credit bureaus. Id. ¶¶14-15. As part of the dispute process with the credit bureaus, Melton's dispute was forwarded to Sterling via an automated consumer data verification (ACDV) form. *See* Am. Compl. ¶¶13(d), 44, 51 & 62. In completing the ACDV, Sterling verified Ms. Melton's address in Hyattsville, Maryland and falsely verified that no payment was received. Id. ¶100; Melton Decl. ¶16. As a result of the false information regarding the Sterling account being placed on Melton's report, her financial reputation in Maryland was harmed and severely hampered her ability to obtain credit and employment. Melton Decl. ¶17.

## III.    APPLICABLE LAW AND ARGUMENT

When a court's power to exercise personal jurisdiction is challenged by a motion under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). Absent an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of personal jurisdiction" to meet this burden of proof. *Id*. In determining whether the plaintiff has met its burden, all jurisdictional allegations must be construed in the light most favorable to the plaintiff, and the most favorable inferences must be drawn for the existence of jurisdiction. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (internal quotation marks omitted).

This Court may exercise personal jurisdiction over Sterling "if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Engineers Corp. v. Geometric Ltd.*, 5561 F.3d 273, 277 (4th Cir. 2009) citing *Carefirst*, 334 F.3d at 396; then citing *Stover v. O'Connell Assoc., Inc.*, 84 F.3d 132, 136 (4th Cir. 1996). "The nature of the claim and the defendant's contacts with the forum state determine whether a court may assert specific or general jurisdiction." *Johansson Corp. v. Bowness Constr. Co.*, 304 F.Supp.2d 701, 703 (D. Md. 2004). "Specific personal jurisdiction applies where a controversy is 'related to or arises out of a defendant's contacts with the forum.'" *Griffin Whitaker, LLC v. Torres*, 2010 WL 2696704, *2 (D. Md. Jul. 7, 2010) (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). "A court may exercise general jurisdiction, by contrast, only where a defendant maintains "continuous and systematic" contact with the forum state." *Id.* citing *Helicopteros*, 466 U.S. at 415.

## A.    This Court may exercise specific personal jurisdiction over Sterling.

Maryland's long-arm statute extends jurisdiction over non-resident defendants "to the limits permitted by the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *Potomac Design, Inc. v. Eurocal Trading, Inc.*, 839 F. Supp. 364, 369 (D. Md. 1993). Maryland law dictates whether Maryland's long-arm statute authorizes jurisdiction, while federal law dictates whether exercise of jurisdiction comports with federal due process protections. *Id.* "To satisfy the long-arm prong of the analysis, a plaintiff must specifically identify a statutory provision that authorizes jurisdiction, either in his complaint or in opposition to a Rule 12(b)(2) motion." *Hausfeld v. Love Funding Corp.*, 16 F.Supp.3d 591, 597 (D. Md. 2014) (citations omitted).

### 1.    The Maryland Long-Arm Statute Easily Reaches Sterling

Maryland's long-arm statute states in pertinent part:

(b) A court may exercise personal jurisdiction over a person, who directly or by an agent:

(1) Transacts any business or performs any character of work or service in the State;

4

(2) Contracts to supply goods, food, services, or manufactured products in the State;

(3) Causes tortious injury in the State by an act or omission in the State;

(4) Causes tortious injury in the State … by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State; [or]

(5) Has an interest in, uses, or possesses real property in the State[.]

§ 6-103(b)(1)-(5). Only one of these provisions must be satisfied for personal jurisdiction to exist in this case. *Jones v. Koons Automotive, Inc.*, 752 F.Supp.2d 670, 677 (D. Md. 2010).

### a.      This Court Has Jurisdiction Pursuant to §§6-103(b)(1),(2).

Jurisdiction exists under (b)(1) and (b)(2) by virtue of Sterling's financing agreement with Melton. Sterling purposefully entered into a financing agreement with Melton, a Maryland resident, to facilitate and consummate the sale of its product. In furtherance of its financing agreement, Sterling demanded and accepted payments from Melton. *See* Melton Decl. ¶¶3-10. Sterling contacted Melton by phone while she was in Maryland. Sterling mailed a Settlement Offer to Melton at her Maryland home address. Id. ¶¶8-10. And Sterling accessed Melton's Maryland bank account to collect the settlement payment. Sterling then falsely reported that the account had been charged off because Melton did not make a payment. When Melton disputed the false reporting, Sterling continued to report that Melton did not make a payment. Id. ¶¶11-16.

Notwithstanding the foregoing undisputed facts, Sterling argues these business contacts with Maryland does not subject it to jurisdiction under Maryland. In support of its argument, Sterling cites to *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S.Ct. 1773 (2017). Specifically, Sterling asserts that "the Court held that specific jurisdiction requires 'a connection between the forum and the specific claims at issue'; a defendant's unrelated contacts with

a forum are irrelevant, as 'continuous activity of some sorts within a state … is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.' " ECF 31-1 at 10 quoting *Bristol*, 137 S.Ct at 1781. Defendant then points out that the Fourth Circuit "similarly holds that specific jurisdiction is appropriate when the nonresident defendant's 'qualifying contacts with the forum state also constitute the basis for the suit.'" ECF 31-1 at 10 quoting *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 559 (4th Cir. 2014). According to Sterling, "none of [Melton's] allegations supplies a basis for specific jurisdiction because not one of Sterling's in-state activities caused Plaintiff's FCRA suit." ECF 31-1 at 10. The lynchpin of Sterling's argument is that "although Plaintiff alleges in broad strokes that her injury relates to Sterling's general retail business operations in Maryland, there are no specific allegations that any credit reporting activities occurred in Maryland, no allegations that any FCRA-related investigations were conducted in Maryland, and no other meaningful and direct causal connections between Sterling's conduct occurring in Maryland and the suit at all." Id. at 11.

Remarkably, Sterling was able to make this argument with a straight face. To suggest that the false reporting of an unpaid debt for merchandise that was purchased in Sterling's retail store in Waldorf, Maryland is not connected to Sterling's retail business is preposterous. The argument is patently absurd. Of course, the reporting of a debt that was created to finance a purchase of merchandise at Sterling's retail store in Waldorf Maryland "relates to" Sterling's retail business. *Hausfeld*, 16 F.Supp.3d at 596 ("Specific personal jurisdiction applies where a controversy is related to or arises out of' a defendant's contacts with the forum.") (citations omitted). Certainly, Sterling's reporting of the Melton debt "bear['s] some relationship" to its retail operations in Maryland. *Id*. at 599 ("Maryland courts have long held that the long-arm statute confers jurisdiction as long as the claims asserted bear some relationship to the acts in the forum state.") (citations omitted). For heaven's sake, not only does Sterling sell jewelry but it finances purchases of its jewelry. As a lender, Sterling

is certainly in the business of collecting on its debts. And reporting a debt to a credit bureau is a method of collecting on its debt. *Brooks v. Midland Credit Mgmt.*, 2013 WL 1010455, *4 (D. Md. Mar. 13, 2013) ("Several cases have relied upon the FTC letter as persuasive authority that reporting a debt to a CRA is a collection activity."). Therefore, Sterling's collection activities arose out of and/or relate to Sterling's jewelry financing activities.

Moreover, Sterling's insistence that Maryland does not have personal jurisdiction because none of the violating acts occurred in Maryland is misplaced for it is §6-103(b)(3), *not* §§6-103(b)(1) and 6-103(b)(2), that requires the violating act to have occurred in Maryland. The standard under §§6-103(b)(1) and 6-103(b)(2) is that violating act arise out of or relate to Sterling's business operations in Maryland. In discussing the applicability of 6-103(b)(1), the Fourth Circuit opined:

> To satisfy the constitutional due process requirement, a defendant must have sufficient "minimum contacts" with the forum state such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quotation and citation omitted). **The minimum contacts test requires the plaintiff to show that the defendant "purposely directed his activities at the residents of the forum" and that the plaintiff's cause of action <u>"arise[s] out of"</u> those activities.** *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citation and quotation omitted). This test is designed to ensure that the defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (quotations and citations omitted). It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

*Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273 (4th Cir.2009) (emphasis added). Therefore, Sterling's claim that Maryland has no jurisdiction over it because the credit reporting occurred outside of Maryland is misplaced.

Consequently, even if Sterling's claim was true, which it is not, Sterling is still subject to specific personal jurisdiction because the purported credit reporting – whether it occurred in Maryland or not – undoubtedly arose out of Sterling's retail operations in Maryland. In *Jones*, a case where the defendant had substantially lesser ties to the state, the court found Section 6-103(b)(1) authorized the

exercise of jurisdiction over the defendant based on the plaintiff alleging that defendant sold plaintiff a car in Maryland, that defendant prepared the requisite purchasing documents, that those documents were prepared and signed in Maryland. *Id.* 752 F.Supp.2d at 677. Here, the defendant has done the equivalent and much more. Accordingly, pursuant to §6-103(b)(1), Maryland has personal jurisdiction over Sterling because it transacts business in Maryland and those business activities directly relate to Sterling's violations of the FCRA. Similarly, under §6-103(b)(2), Maryland has personal jurisdiction over Sterling because Sterling entered into a financing contract with Melton and the falsely reported debt arose directly from Sterling's contract.

        **b.**      **This Court Has Jurisdiction Pursuant to §§6-103(b)(3) and/or 6-103(b)(4).**

Jurisdiction also exists under sections 6-103(b)(3) by consequence of Sterling's false reporting on Melton in Maryland. Specifically, this section authorizes jurisdiction if the defendant "[c]aused [the] tortious injury in the State by an act or omission in the State." §6-103(b)(3). Importantly, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's *suit-related* conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 282 (2014) (emphasis added). In the tort context, courts should generally consider whether the nonresident "engaged in some activity purposefully directed toward the forum state." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997). Purposeful direction exists when there is an intentional action expressly aimed at the forum state with the knowledge that the brunt of the injury would be felt in the forum state. *See Planet Technologies, Inc. v. Planit Technology Group, LLC*, 735 F.Supp.2d 397, 403 (D. Md. 2010) ("the plaintiff must show that the defendant *knew* that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.") (quoting *CoStar Group, Inc. v. LoopNet, Inc.,* 106 F.Supp.2d 780, 785 (D. Md. 2000)).

Instead of citing to the Supreme Court's decision in *Bristol*, which involved a product liability action brought by *nonresidents* of the forum state, the defendant should have relied on *Calder v. Jones*, 465 U.S. 783 (1984) – a defamation case – which is analogous to Plaintiff Melton's credit reporting claims. In *Calder*, a California actress brought a libel suit in California state court against a reporter and an editor, both of whom worked for the National Enquirer at its headquarters in Florida. The plaintiff's libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000 copies being sold.

"The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons." *Walden*, 571 U.S. at 287. "In this way, the 'effects' caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there. That connection combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." *Id*.

Here, Sterling reported credit information about Ms. Melton to the credit bureaus. Sterling's conduct is easily analogized to the conduct of the defendants in *Calder*. Libel claims have the same basic structure as a claim for relief stemming from inaccurate credit reporting under the FCRA. Prior to the FCRA's enactment, the traditional remedy for a consumer harmed by false credit reporting was to bring an action for libel. Congress intended the FCRA to serve as a replacement for state law claims related to libel and invasion of privacy. *See* Hearings on S. 823, Subcomm. on Fin. Institution of the Senate Banking and Currency Comm., 91st Cong., 1st Sess. 24 (1969); *Mitchell v. BancFirst*, 2018 WL 338217, *3 (D. Kan. Jan. 9, 2018) ("Congress intended the FCRA to serve as a replacement for state

law claims related to libel and invasion of privacy") (citing *Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1370 (10th Cir. 1987) ("By enacting the FCRA, Congress intended to prevent invasions of consumers' privacy"); then citing Virginia G. Maurer, *Common Law Defamation and the Fair Credit Reporting Act*, 72 Geo. L.J. 95, 97 (1983) ("Prior to the FCRA, injuries that resulted from the dissemination of erroneous information by credit reporting agencies could be redressed through the common law action of defamation. The FCRA introduced a new means for consumers to redress such injuries."); *see also Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th Cir. 2010).[1]

Like the defendants in *Calder*, Sterling communicated damaging information to third parties that injured Ms. Melton's reputation. Sterling's conduct was the equivalent of publishing a libelous article about Ms. Melton in the state of Maryland. The "reputational-based effects" of reporting information about Ms. Melton's payment history while she resided in Maryland connected Sterling to Maryland because that was the place Ms. Melton's reputational injury took place. Considering the importance of credit information in today's economic marketplace, Sterling should have foreseen that the brunt of any harm stemming from inaccurate reporting would be felt in Ms. Melton's state of residency.

Sterling's motion does not present a serious argument to the foregoing. The gravamen of its argument is that the credit reporting and/or relating activities did not occur in Maryland and were not related to Sterling's business within Maryland. ECF 31-1 at 10 & 11. However, Sterling utterly fails to offer any case law to rebut Plaintiff's argument that reporting a false debt is a tortious act that occurred in the state that the subject person lives in. Here, the credit information furnished by Sterling will be disclosed to anyone that sees a copy of Ms. Melton's credit report. It will then reflect on her ability to obtain credit within the state of Maryland. As discussed above, the furnishing of credit

---

[1] *Id*. ("Congress intended [FCRA, 1681h(e)'s] general bar on defamation, invasion of privacy, and negligence actions to be the quid pro quo for providing full disclosure under the FCRA."); *Thomas v. Equifax*, 619 F.2d 700, 703 (8th Cir. 1980) ("Actions or proceedings in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information, however, are specifically provided for in the Act and are limited by the Act in section 1681h(e).").

information should be deemed publication as required for specific jurisdiction under the standards laid

out in *Calder*.

The FCRA case law interpreting *Calder* has found the defendant's knowledge as where the

harm or effect will be felt is dispositive as to whether the defendant is subject to jurisdiction of the

forum state where the harm occurred. In *Harris v. Equifax*, 2002 WL 32770554 (D. Or. May 31, 2002),

the court held the "effects test" is satisfied if the plaintiff can show the defendant knew it was causing

harm to plaintiff in the forum state. *Id*. at *3 ("the test is satisfied when the defendant is alleged to

have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident

of the forum state"). Likewise, in *Mitchell v. BancFirst*, 2018 WL 338217 (D. Kan. Jan. 9, 2018), the

court found that the "[k]knowledge of the plaintiff's state of residence … is a key factor." *Id*. at *3

citing *Cole v. Am. Family Mut. Ins. Co.*, 333 F.Supp.2d 1038, 1048 (D. Kan. 2004) ("From the

information required to access a credit report … Adler was aware that plaintiff resided in Kansas.

Accordingly, Adler's actions were 'expressly aimed' a plaintiff, a Kansas resident."). In finding that

jurisdiction existed, the *Mitchell* court opined:

> Here, plaintiff alleges he contacted the consumer reporting agencies on at least four
> occasions to dispute the accuracy of information being reported by defendant. Pursuant
> to 15 U.S.C. §1681*i*(a)(2), defendant should have received notice of plaintiff's disputes
> from the consumer reporting agencies. Plaintiff claims defendant **knew he was a
> Kansas residen**t, as it frequently sent correspondence to his Kansas addresses
> …Comparing the facts of this case to other similar FCRA cases, the court finds plaintiff
> has established a *prima facie* case of personal jurisdiction over defendant. **Although
> minimal, defendant's contacts with plaintiff—<u>establishing its awareness of
> plaintiff's Kansas residency</u>—are enough**. Defendant knew that plaintiff was
> attempting to dispute information it provided to the consumer reporting agencies.
> Defendant allegedly continued to reverify the disputed information so that plaintiff's
> credit report remained incorrect. And defendant communicated directly with plaintiff
> by sending to plaintiff's Kansas address a letter in which it confirmed he had no late
> payments on his account. Yet plaintiff's credit report continued to reflect these
> inaccuracies. Much like *Gordon* and *Rivera*, defendant expressly aimed its activity at
> Kansas by contacting plaintiff in Kansas regarding the inaccuracies, while still failing
> to correct the misinformation which, therefore, caused injury to plaintiff in Kansas. By
> knowing that it was injuring plaintiff in Kansas, defendant could have reasonably
> anticipated being hauled into court here.

*Mitchell*, 2018 WL 338217, at *4.[2] *And see Turner v. Regions Bank*, 770 F.Supp.2d 1244, 1251 (M.

D. Ala. 2011) (MCCB expected to receive a benefit from reporting a debt to Equifax, it knew it was

reporting a debt allegedly owed by Alabama residents; and, as such, it knew that its actions would

have repercussions in Alabama. Therefore, the evidence is sufficient to support the conclusion that

MCCB delivered notice of an outstanding debt into the stream of commerce knowing that it would

affect residents of Alabama and hopefully induce payment from Alabama.)

The *Mitchell* opinion is instructive because the defendant engaged in similar credit reporting

violations. However, it should be noted that the defendant in *Mitchell* did have a basis for filing the

motion because it "[w]as an Oklahoma corporation headquartered in Oklahoma City, OK and that all

of its offices and branches [we]re located within Oklahoma." *Id*. at *1. And the defendant had "no

employees or physical facilities in Kansas, it d[id] not advertise or solicit customers in Kansas, and it

[w]as not registered to do business in Kansas." *Id*. Importantly, the "Plaintiff was an Oklahoma

resident when he entered into the financing agreement with defendant, but [moved] to Kansas." *Id*.

"The only connection defendant claim[ed] to ha[d] with the forum in regard to th[e] litigation [w]as

the fact that plaintiff currently live[d] in Kansas." *Id*.

---

[2] In *Gordon v. DTE Energy*, 680 F.Supp.2d 1282 (W.D. Wash. 2010), a case cited by the *Mitchell* court, the plaintiff sued a Michigan-based utility company for violations of the FCRA, alleging the defendant had not removed a fraudulent charge that appeared on her credit report. The court found it had personal jurisdiction over the nonresident defendant using the *Calder* test: 1) an intentional act, 2) expressly aimed at the forum state, 3) which causes herm that the defendant knows is likely to be suffered in the forum state. *Id*. at 1285. The court noted that under the "express-aiming" element, "knowledge of the plaintiff's residence is the crucial element." *Id*. The court further found that the defendant knew the harm would be suffered in Washington because, "harm due to violations of the FCRA occurs where the plaintiff feels the consequences, not where the event complained of occurred." *Id*. at 1286 (citing *Meyers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001).

In *Rivera v. Bank One*, 145 F.R.D. 614 (D.P.R. 1993), which was also cited by *Mitchell*, the plaintiff sued a bank for failing to correct false information on a credit report concerning a delinquent credit card payment. The court found personal jurisdiction in Puerto Rico, noting "the record contains ample evidence of communication between plaintiff and defendant which tend to establish that defendant was aware that its continued refusal to correct plaintiff's credit report was causing plaintiff injury in Puerto Rico." *Id*. at 624. Because the defendant knew the plaintiff lived in Puerto Rico and continued to refuse to correct the credit report, the court found the defendant "could reasonably anticipate being hauled into court here to answer for its actions." *Id*. at 624-25.

Sterling can argue none of the foregoing. Quite to the contrary, Sterling has offices and branches with Maryland; Sterling has employees and physical stores in Maryland; Sterling advertises and solicits customers in Maryland; Sterling is registered to do business in Maryland; and Sterling is being sued in the same state that it executed the financing agreement with Melton. If Kansas had jurisdiction over BancFirst in the *Mitchell* action, then surely Maryland has jurisdiction over Sterling in the case sub judice.

Alternatively, even if the publication is deemed to have occurred outside of Maryland, the harm was felt in Maryland, and therefore, jurisdiction would be proper under §6-103(b)(4). The Defendant argues that section 6-103(b)(4) only "pertains to the exercise of *general* jurisdiction." ECF 31-1 at 8 citing *United Cutlery Corp. v. NFZ, Inc.*, No. CCB-03-1723 (D. Md. Dec. 1, 2003). However, neither the Maryland Court of Appeals nor the Fourth Circuit has made such a finding. Although Sterling cites the Fourth Circuit opinion in *Stover* as support for this proposition, a close reading of the pinpoint citation reveals that *Stover* did not hold §6-103(b)(4) pertains to only general personal jurisdiction. In fact, the jurisdiction inquiry conducted by the *Stover* court pertained to specific personal jurisdiction, not general personal jurisdiction. The statute reads:

> A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> Causes tortious injury in the State … by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State[.]

§6-103(b)(4). There is no language in section 6-103(b)(4) that suggests the tortious injury must be *unrelated* to the defendant's activities in the State. Instead, the statute merely states that a tortious injury must occur outside the State. Here, the Plaintiff has alleged that Sterling committed a tort by reporting inaccurate credit information. Sterling has alluded, without providing any proof (i.e. affidavit), that its false reporting occurred outside of Maryland. As discussed earlier, Sterling's false reporting is related to its retail operations. And the effects of the false reporting occurred in Maryland

where Plaintiff Melton lives. Therefore, regardless of whether the tortious act occurred in or outside the state, the injury was felt in Maryland and Sterling's persistent business operations relates to the tortious act, Maryland has specific personal jurisdiction under sections 6-103(b)(3) or 6-103(b)(4).

### c.      This Court Has Jurisdiction Pursuant to §6-103(b)(5).

Jurisdiction exists under 6-103(b)(5) because Sterling has an interest in, uses, or possesses real property in the State of Maryland and Plaintiff's claims are connected to the property. Specifically, Sterling's retail store in Waldorf, Maryland is the location Melton obtained the loan to purchase the merchandise that is the subject of the disputed debt being reported on Melton's credit report. Indeed, the retail store is a key component of Sterling's business operation and was at the center of the transaction. Thus, the retail location is connected to the reported debt.

Despite the obvious, Sterling argues "subsection (b)(5) does not confer specific jurisdiction over Sterling …[b]ecause her FCRA suit bears zero connection with the supposed property interests Sterling has in Maryland[.]" ECF 31-1 at 8-9 citing *McLaughlin v. Copeland*, 435 F.Supp. 513, 529 (D. Md. 1977) and *Cappel v. Riasco, LLC*, 13 A.3d 823 (Md. App. 2011). It appears Sterling is suggesting that the claim must be against the property for 6-103(b)(5) to confer jurisdiction. However, neither *McLaughlin* nor *Cappel* supports that assertion.

In *McLaughlin*, none of the defendants had interest in *any* property, much less interest in a property that was related to their business. *See id*. at 526 (defendant Veasey was lawyer residing in Delaware and had no location in Maryland) (defendant Copeland was a citizen of Delaware and neither maintained a business office or transacted business in Maryland) (defendant Junior did not currently own any real estate in Maryland, let alone property that was related to a business purpose). Nothing in the holding of *McLaughlin* suggests that jurisdiction under §6-103(b)(5) is only proper if the claim is directly against the property interest. Rather, the court merely stated that "[j]urisdiction under subsection (b)(5) is limited to causes of action having some connection with the alleged property

interest." *Id*. at 529. Here, Melton's cause of action has some connection Sterling's "use" of the retail store in Waldorf, Maryland. §6-103(b)(5) ("A court may exercise personal jurisdiction over a person, who … uses … real property in the State[.]").

As for *Cappel*, the plaintiff attempted to assert jurisdiction under 6-103(b)(5) on the basis that the defendant owned an unimproved parcel of real estate in Maryland. *Id*. 13 A.3d at 825, 827, 829. But the Cappels' unimproved land had no other ties to Maryland. *Id*. at 826 (plaintiff only claimed the defendants purchased vacant property that they continued to own and pay). "Yet, when the property which serves as the basis for jurisdiction is completely unrelated to the plaintiff's cause of action, the presence of property alone will not support jurisdiction." *Id*. at 832 citing *Shaffer v. Heitner*, 433 U.S. 186, 209 (1977). "While the presence of the defendant's property in a State might suggest the existence of other ties among the defendant, the State, and the litigation, **when those other ties do not exist**, jurisdiction is not reasonable." *Id*. (internal quotations omitted). Had the Cappels' used the property for business purpose in Maryland, then the plaintiff would have had a legitimate claim for jurisdiction. *Id*. at 832 citing *Access Telecom v. MCT Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir. 1999), *cert. denied*, 531 U.S. 917, 121 S.Ct. 275, 292, 148 L.Ed.2d 200 (2000) ("The mere renting or ownership of property in a forum is not enough to create personal jurisdiction **when that property is not used to conduct business in the forum**.") (emphasis added)).

In a nutshell, the defendants in *McLaughlin* and *Cappel* did have any business contacts stemming from any property they owned in Maryland. Here, Sterling's property interest is in a retail store that it uses to conduct substantial business in Maryland. Further, as a result of the business usage stemming for its retail store, Plaintiff Melton made a purchase and acquired a debt with Sterling. Thus, Sterling's property interest and use of the retail store serves as a reasonable means for Maryland to acquire jurisdiction of Sterling in this action.

### 2.        The Due Process Inquiry Is Satisfied

The inquiry does not end with the long-arm statute, however, as the court must consider whether the exercise of jurisdiction over Defendant would violate the Due Process Clause of the Fourteenth Amendment. *Hausfeld*, 16 F.Supp.3d at 600. Despite having the necessary minimum contacts, the court must still determine whether exercising personal jurisdiction would "offend traditional notions of fair play and substantial justice." *Jones*, 752 F.Supp.2d at 678 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, "[t]he crucial issue is whether the defendant's contacts with the forum state are substantial enough that he reasonably could 'expect to be haled before a [Maryland] court.'" *CoStar Grp., Inc. v. LoopNet, Inc.*, 106 F.Supp.2d 780, 784 (D. Md. 2000). In deciding whether the exercise of jurisdiction is reasonable, the court must consider three prongs: "(1) the extent to which the defendant 'purposely availed' itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (citation omitted).

#### a.        First Prong Is Satisfied For The Defendant Purposely Availed Itself Of Conducting Activities In Maryland

Sterling is a registered company with SDAT and has reserved numerous trade names that are protected under Maryland law. Additionally, Sterling uses the Maryland judicial system to enforce contract obligations against customers that default on their contractual obligations. Not to mention, Sterling has had a presence in Maryland for 50 years and owns 50 brick in mortar stores throughout the state of Maryland. The question of whether Sterling purposely availed itself of the privilege of conducting activities is an easy one.

#### b.        Second Prong Is Satisfied For The Plaintiff's Claims Arose Out Of The Activities Directed At Maryland.

"The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum—requires that the defendant's contacts with the forums state form the basis of the suit." *Consulting Eng'rs*, 561 F.3d at 278-79. This prong has been discussed and answered under the Maryland Long-Arm Statute analysis. As discussed above, Sterling's false credit reporting concerns a debt that arose from a purchase and financing agreement between Melton and Sterling that was conducted at Sterling's retail store in Waldorf, Maryland. Therefore, Plaintiff's claims arose out of Defendant Sterling's business activities in Maryland.

### c.     Third Prong Is Satisfied For The Exercise Of Personal Jurisdiction Would Be Constitutionally Reasonable.

An exercise of jurisdiction by this court would also be "constitutionally reasonable," satisfying the third prong of the test. *CFA Inst. V. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 296 (4th Cir. 2009). "Generally, such an analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." *Id.* (internal quotation marks omitted). Several considerations are relevant here, including "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Consulting Eng'rs*, 561 F.3d at 279. the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies."

The is also an easy question. There is no burden for Sterling to litigate in this forum for it has a substantial presence in Maryland and it already litigates disputes in Maryland courts. Certainly, Maryland has an interest in the resolution of grievances involving transaction that took place in Maryland and harms Maryland residents. Plaintiff also has a significant interest in litigating this

dispute in forum in which she lives. As for the general "interest of the states" inquiry, that issue does not appear to be particularly relevant here. Consequently, Plaintiff has set forth facts regarding contacts demonstrating that it would not offend due process to subject Defendant to personal jurisdiction in Maryland, thereby making a *prima facie* case for personal jurisdiction in Maryland. *Hausfeld*, 16 F.Supp.3d at 603.

**B.      This Court may exercise general personal jurisdiction over Sterling.**

"The question of jurisdiction may not be decided solely on the basis of §6-103." *Springle v. Cottrell Engineering Corp.*, 40 Md.App. 267, 269 (1979). Jurisdiction is proper under §6-102(a) upon "service of process is validly effected upon its resident agent in Maryland and at least one of the jurisdictional criteria set forth in §6-103(b) is shown to exist." *Id*. at 288. In *Springle* the Maryland Special Court of Appeals found jurisdiction was proper under section 6-102(a) because the defendant was served in Maryland and satisfied 6-103(b)(1) and (2) based on the following: (1) qualified to do business in Maryland, (2) occasionally bid on engineering jobs in Maryland, (3) actually done dredging work in Maryland, (4) obtained a contractor's license from both the State and the City of Baltimore, and (5) paid a franchise tax of $10.00 and personal property tax of $40 to the State. *See id*. at 288-89. "In *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 444-47, the [Supreme] Court said … 'if an authorized representative of a foreign corporation be physically present in the state of the forum and *be there engaged in activities appropriate to accepting service or receiving notice on its behalf*, we recognize that there is no unfairness in subjecting that corporation to the jurisdiction of the courts of that state through such service of process upon that representative." *Mission West Properties, L.P. v. Republic Properties Corp.*, 162 Md.App. 17, 31 (2005). To be sure, the Supreme Court conditioned the foregoing statement on the claim "at *least* [be] *in relation to a cause of action arising out of the corporation's activities within the state of the forum*." *Id*.

Ultimately, whether service of process and the existence of at least one of the jurisdictional criteria set forth in §6-103(b) constitute general or specific personal jurisdiction, is of no effect because either one or the other will apply in this action.

**C.      Summary And Conclusion.**

Rarely, if never, will a defendant challenge personal jurisdiction when that defendant has such substantial business operations with a physically location in the forum state. In fact, the entire modern body of case law regarding specific personal jurisdiction was developed "[b]ecause the requirement that a person be *physically* present in a state before he may be subjected to that state's exercise of judicial power was too restrictive to serve the increasing demands of interstate commerce…". *Stover*, 84 F.3d at 136 (emphasis added). Indeed, many of the cases cited in Sterling's brief illustrates this point. For instance, in *Goodyear Dunlop Tire Operations, S.A. v. Brown*, 564 U.S. 915 (2011), not all the defendants challenged jurisdiction – only the three defendants from Turkey, France and Luxembourg challenged North Carolina's personal jurisdiction over them. On the other hand, the defendant "Goodyear USA, an Ohio corporation[,] … which had plants in North Carolina and regularly engaged in commercial activity there, did not contest the North Caroline court's jurisdiction over it." *Id*. at 918.

Another example is the *Bristol-Myers* case, in which there were "[m]ore than 600 plaintiffs, most of whom [we]re *not* California residents" that filed against Bristol-Myers Squibb Company (BMS) in a California state court. *Id*. 137 S.Ct. at 1777. BMS, a large pharmaceutical company that is incorporated in Delaware and headquartered in New York, has "business activities in other jurisdictions, including California." *Id*. at 1778. More particularly, BMS had five research and laboratory facilities, which employed a total of around 160 employees, employed about 250 sales representatives in California and maintained a small state-government advocacy office in Sacramento." *Id*. BMS did not move to dismiss the California resident's claims. Rather, "BMS moved

to quash service of summons on the nonresidents' claims." *Id.* Similarly, in *Calder*, a case relied on by Melton, the plaintiffs in *Calder* sued the National Enquirer, Inc., its local distributing company, writer and editor. *Id.* 465 U.S. at 785. The Enquirer was a Florida corporation with its principal place of business in Florida, however, it sold 600,000 newspaper copies in California. *Id.* "Both the Enquirer and the distributing company answered the complaint and made no objection to the jurisdiction of the California court." *Id.* It was the individual reporter and editor of the Enquirer that objected to jurisdiction. *Id.* at 785-786.

The Defendant Sterling's position is not analogous to the defendants that moved to dismiss in *Daimler*, *Bristol* and *Calder*. Sterling is not moving to dismiss a nonresident of Maryland as the defendant in *Bristol* did. Sterling is not a company based in Europe with no direct contacts in Maryland as the defendant in *Daimler*. And Sterling is not an individual employee without a physical presence in Maryland as the defendant in *Calder*. Rather, Sterling's position is analogous to the defendants that did not challenge jurisdiction. The *Daimler*, *Bristol* and *Calder* cases demonstrate that a defendant with a physical business operation in the forum state should not moved to dismiss a claim from a resident of the forum if the company itself is being sued and not individual employees of the company.

Not to ascribe any merit to Sterling's meritless motion, but the genius of the motion is that there is no on point case law directly discounting Sterling's argument because no defendant has ever had the audacity to bring such a patently ridiculous motion. The motion should be denied.


Dated: April 26, 2019                    Respectfully Submitted,


                                         /s/ Kevin C. Williams
                                         Kevin C. Williams, Esq., No. 18072
                                         Law Office of Kevin Williams, LLC
                                         8025 13th Street, Suite 107
                                         Silver Spring, MD 20910
                                         301.399.1700
                                         kevin@kwesquire.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of April, 2019, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

By:   */s/ Kevin Williams*
Kevin Williams #18072
Law Office of Kevin Williams, LLC
8025 13th Street, Suite 107
Silver Spring, MD 20910
Tel: (301) 399-1700
kevin@kwesquire.com

*Counsel for Plaintiff*