IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND

| | |
|---|---|
| **VELMA M. MELTON,**<br>         Plaintiff,<br>vs.<br>**SELECT PORTFOLIO SERVICING, INC.** *et al.*,<br>         Defendants. | Case No. 8:19-cv-00209-TDC |

**MEMORANDUM IN SUPPORT SELECT PORTFOLIO SERVICING, INC.'S
<u>MOTION FOR A PROTECTIVE ORDER</u>**

  Plaintiff served a notice of deposition on Defendant Select Portfolio Servicing, Inc. ("SPS") pursuant to Fed. R. Civ. P. 30(b)(6) identifying ***ninety-four*** discrete topics and requesting that SPS produce ***eighteen*** categories of related documents (the "Notice"). (*See* Not. of Dep., attached as Exhibit A.)  The Notice states that the deposition will take a ***minimum of two days and will extend to a third*** if necessary. (*See id.*)  This is a straightforward action alleging one cause of action against SPS for violation of the Fair Credit Reporting Act ("FRCA") and a state-law defamation claim premised on the same facts as those supporting the FCRA claim. Plaintiff's Notice is designed to be unduly burdensome and harassing. Therefore, SPS respectfully requests that the Court enter a protective order limiting the length of the deposition to one (1) day of seven (7) hours and the scope of the corporate designee deposition to matters that are relevant, proportional to the needs of the case, and properly discoverable.

  *Certification Pursuant to Fed. R. Civ. P. 26(c) and L.R. 104.7*

  By letter dated September 18, 2019, undersigned counsel for SPS notified counsel for Plaintiff Velma Melton of this discovery dispute over the Notice and intent to file a Motion for Protective Order. (*See* Letter dated September 18, 2019; attached as Exhibit B.) The letter advised

Plaintiff that it did not have the appropriate individual available in Salt Lake City for the three day deposition on the dates noted (September 24, 25 and 26, 2019), but offered to have a corporate designee travel to the Washington, D.C. area at SPS's expense. SPS also provided four alternative dates (September 30, October 4, October 14 or October 15, 2019) for a corporate designee deposition consisting of one 7 hour day in Washington, D.C. (or suburban Maryland). *Id.* SPS also stated that the 94 discrete deposition topics and 18 document requests were overbroad, unduly burdensome and disproportionate to the needs of the case. As requested by counsel for Plaintiff during a telephonic meet and confer on September 18, 2019, counsel for SPS also identified topics for which it would agree to produce a corporate designee. (*See* Email string dated September 19, 2019, attached as Exhibit C.) Counsel for Plaintiff and SPS also subsequently discussed the scope and length of the corporate designee deposition and attempted to resolve the discovery disputes concerning the Notice in a follow up telephone conversation on September 19, 2019 at approximately 12:45 pm. By email dated September 19, 2019, counsel for Plaintiff rejected SPS's proposals, necessitating the filing of this motion for a protective order as to the Notice.

## BACKGROUND

As the Court acknowledged in a recent Order, "[t]he claims and defenses in this case are relatively uncomplicated." (Dkt. No. 66, Ltr. Order dated July 31, 2019.) Nevertheless, Plaintiff has proceeded with discovery as though developing the necessary facts for trial requires a Herculean effort. As to SPS alone, Plaintiff propounded twenty-four interrogatories that included eighteen separate and discrete sub-parts, most of which were over a paragraph in length. Fed. R. Civ. P. 33(a) (limiting parties to twenty-five interrogatories, "including all discrete subparts"). Plaintiff also served SPS with extensive requests for production and requests to admit. Finally, Plaintiff noticed this potentially three-day Rule 30(b)(6) deposition of SPS that is the subject of

this Motion and (2) requested deposition dates for five other individuals under Rule 30(b)(1) identified in SPS's discovery production.[1]  As the Court's Letter Order acknowledged, Plaintiff has asserted that she intends to take ***3-5 depositions per defendant***.[2]

*Certification Pursuant to L.R.*

By letter dated September 18, 2019, counsel for SPS notified counsel for Plaintiff Velma Melton of this discovery dispute and intent to file a Motion for Protective Order.  (Letter dated September 18, 2019 attached as Exhibit B.) The letter advised Plaintiff that it did not have the appropriate individual in Salt Lake City for the deposition, but offered to have a corporate designee travel to the area as SPS's expense.  SPS also provided four alternative dates (September 30, October 4, October 14 or October 15, 2019) for a corporate designee deposition in Washington, D.C. (or suburban Maryland).  *Id.*  As requested by counsel for Plaintiff during a telephone conference on September 18, 2019, counsel for SPS also identified topics for which it would agree to produce a corporate designee.  (*See* Email dated September 19, 2019, a copy of which is attached as Exhibit C.)  Counsel for Plaintiff and SPS also discussed the corporate designee deposition by telephone on September 19, 2019 at 12:45 pm.  By email dated September 19, 2019, counsel for Plaintiff rejected SPS's proposals, necessitating the filing of this motion for a protective order as to the Notice.

---

[1] SPS reserves the right to seek a protective order concerning any further deposition notices.  SPS responded top Ms. Melton's request to schedule these depositions by letter dated September 18, 2019.

[2] As the Court also noted, considering the scheduling order only allots 25 total hours for depositions per side, "[p]resumably, Plaintiff anticipates taking brief depositions." (Dkt. No. 66 at 1 n.4.)  Particularly so if she plans to use between 14 and 21 of her available hours solely on SPS's corporate representative.

Plaintiff's discovery efforts have been driven by the improper goal of attempting to drive up costs and in hopes of creating settlement leverage. Plaintiff is abusing the discovery process. *See Scotch Whiskey Ass'n v. Majestic Distilling Co.*, C.A. No. 88-808, 1988 WL 1091943, at *4 (D. Md. Nov. 30, 1998) (noting that discovery abuse occurs when discovery is "sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence"). Indeed, based on his participation in two meet and confer calls, Plaintiff's strategy appears to be heavily influenced by a paralegal named Thomas Alston, who is a serial FCRA filer with whom this Court is well acquainted.[3] *See Alston v. Orion Portfolio Serv., LLC*, No. 8:15-cv-03697-PJM, Dkt. No. 80, pp. 4-7 (D. Md. June 11, 2019) (discussing Thomas Alston's extensive and troublesome history of FCRA litigation in this District); *see also Best v. Fed. Nat'l Mortg. Assoc.*, 8:17-cv-00314-GJH, Dkt. No 31, pp. 3-4 (D. Md. Dec. 21, 2017) (expressing concerns about Mr. Alston's involvement as a ghost writer in FCRA litigation).

As detailed below, Plaintiff's Notice is unduly burdensome, vague, overbroad, designed to harass SPS, seeks information that is not relevant and disproportionate to the needs of the case, and not discoverable in the first instance. For all these reasons, the Court should grant SPS' motion and enter a protective order limiting the length of the deposition and its scope.

## **Applicable Law**

"All civil discovery . . . is limited in scope by Rule 26(1) in two fundamental ways." *Virginia Dept. of Corrections v. Jordan*, 921 F.3d 180, 188-89 (4th Cir. 2019). First, it must be relevant, which, in itself, is not a high bar. *Id.* "Rule 26 therefore impose[s] another requirement: discovery must also be 'proportional to the needs of the case.'" *Id.* Under the proportionality

---

[3] The undersigned is not accusing Plaintiff's counsel of any unethical conduct. However, Mr. Alston's background is relevant to the pending motion as it supports SPS' belief that Plaintiff is not using the discovery process for its intended purpose under the Federal Rules of Civil Procedure.

requirement, "the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *CX Reinsurance Co. Ltd. v. City Homes, Inc.*, No. 17-1476, 2018 WL 5080944, at *2 (D. Md. Oct. 18, 2018). Instead, the Court must consider the "amount and content of discovery sought" and "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Upon a showing of good cause to limit discovery, the burden shifts to the party seeking the discovery to "establish that the information is sufficiently necessary and relevant to his case to outweigh the harm of disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998).

The District Court has authority to refuse further discovery in a matter where the party requesting the discovery does not adequately demonstrate how it would assist in establishing facts that are necessary to resolve the claim. "[A] party may not merely assert that requested materials may lead to the discovery of admissible evidence without presenting any intelligible explanation of how that is so." *J & J Sports Prods., Inc. v. Wofford*, No. 6:13-CV-02403-GRA, 2014 WL 2980250, at *2 (D.S.C. June 30, 2014) (citing *Cook v. Howard*, 484 F. App'x 805, 813 (4th Cir. 2012) (unpublished per curiam opinion) (describing this type of behavior as "the quintessential fishing expedition")).

## Argument

With regard to the present Motion, SPS does not object to presenting a witness prepared to testify on behalf of information known or reasonably available to SPS regarding credit information furnished and investigations conducted as to Ms. Melton. However, SPS ***does*** object to the proposed length and scope of the deposition. Many of the proposed matters of examination in the

Notice seek information that is not relevant, is disproportionate to the needs of the case, or is not discoverable in the first instance. Therefore, the Court should grant SPS' Motion and limit the deposition as detailed herein.

## I.     The deposition length prescribed by Rule 30 is more than sufficient.

At the very minimum, the deposition should be restricted to the time permitted by Rule 30(d)(1). This Rule provides that unless "otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). SPS has not stipulated, nor has the Court ordered, a lengthier deposition. Although the Federal Rules permit the court to extend the time where necessary to "fairly examine the deponent," that is not warranted here, nor has any factual predicate been laid. This is a simple FCRA action with "relatively uncomplicated" claims and defenses. Plaintiff has not shown a need for an additional two days' worth of deposition time. Accordingly, the Court should grant SPS's Motion and limit the Fed. R. Civ. P. 30(b)(6) deposition to one 7 hour day.

## II.    The Court should limit the scope of the deposition.

Many of the topics listed on the Notice seek information that is simply not relevant or, even if it was, is not proportional to the needs of the case. The Court should grant SPS protection with regard to these improper categories of topics.

### A. A number of the "matters of examination" and document requests are vague, seek irrelevant information and/or information not proportionate to the needs of the case.

Plaintiff's action solely concerns claims for violation of the Fair Credit Reporting Act and defamation due to SPS' purported failure to sufficiently investigate a dispute and properly report accurate information. As this Court has noted the elements of such an FCRA claim are: "(1) the plaintiff notified the consumer reporting agency of the disputed information; (2) the consumer

reporting agency notified the defendant furnisher of the dispute; and (3) the furnisher then failed to investigate and modify the inaccurate information." *Meaney v. Nationstar Mortg.*, No. CV TDC-16-2959, 2018 WL 1014927, at *9 (D. Md. Feb. 21, 2018); *see also Richard v. Equifax, Inc.*, No. 4:14-CV-2519, 2014 WL 7335034, at *2 (S.D. Tex. Dec. 17, 2014) (noting that these are the elements a plaintiff must meet to recover under 15 U.S.C. § 1681s–2(b)). Moreover, a defamation claim requires the Plaintiff to prove: "(1) the defendant made a defamatory communication to a third person; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm." *Gomer v. Home Depot U.S.A., Inc.*, No. CV GLR-16-356, 2016 WL 5791226, at *6 (D. Md. Oct. 4, 2016).

The information sought by Plaintiff must both be relevant to these issues and ***proportional to the needs of the case***. Plaintiff's topics and related document requests seek numerous categories of information that simply have no bearing on the issues in this case. For example, the "matters of examination" list numerous topics in the following categories:

- Total hours of training for various SPS personnel. (*See* Ex. A at 5, 11, 17.)

- The types of training and training materials given to SPS personnel. (*See* Ex. A at 27, 35, 41, 84.)

- Employment and disciplinary files of SPS personnel. (*See* Ex. A at 8, 14, 20, 34, 40.)

- Identities of SPS employees tasked with developing and implementing its policies and procedures for customer disputes and related information and its reporting systems. (*See* Ex. A at 26, 59, 75.)

- Information about SPS's "loss mitigation" and loan payoff departments (See Ex. A at 76, 78, 79, 80, 81.)

- Identities of senior SPS employees who had no direct involvement in the events giving rise to Plaintiffs claims. (*See* Ex. A at 44, 86, 87, 88.)

- SPS's corporate reaction (communications, new materials, or changes in policies) as a result of resolution of various cases. (*See* Ex. A at 28, 29, 36, 43, 92, 94.)

- Information and materials from entirely unrelated matters that have no bearing on this case. (*See* Ex. A at 32, 33, 34, 38, 39, 91, 93.)

- Confidential settlement information. (*See* Ex. A at 37 and 42.)

Other requests are vague, duplicative and/or overbroad:

- Information relating to SPS's information technology systems and audit trail systems for credit reporting (See Exh. A at 55, 56; compare with 65.)

- Information relating to loan accounts paid in full (See Ex. A at 73.)

Many of the categories of document requests also involve similar irrelevant issues. For example, the Notice demands production of documents regarding:

- The types of training and training materials given to SPS personnel. (*See* Ex. A at b, g, j, n.)

- Policies and procedures relating to SPS's disciplinary process for employees. (*See* Ex. A at c, f, k, o.)

These matters of examination and document requests have no relevance to the discrete issues in this case. Acceptable topics might concern Plaintiff's notice of a dispute to the CRA, the CRA's notice to SPS, and then SPS's investigation of Plaintiff's dispute and decision to modify the information or stand by its reporting. At their heart, both of the Plaintiff's claims distill down to the following questions: (1) is she correct that there was an error? (2) did SPS perform a sufficient investigation? and (3) was the continued reporting of the information false/inaccurate? None of the topics or requests noted above have ***any*** bearing on these questions.

Moreover, even if they had some marginal relevance, they are certainly not proportional to the needs of this "relatively uncomplicated" case. These topics seek a considerable amount of

discovery that would require considerable witness preparation. The burden and expense would outweigh any marginal benefit to the Plaintiff in attempting to prove her claims. Finally, the discovery is not important to assist in resolving the issues in the present dispute. Instead, they are designed to be a fishing expedition into unrelated matters in an effort to increase settlement leverage and drive up SPS's discovery costs. Each of these factors supports that the discovery sought is disproportionate to the needs of the case. *CX Reinsurance Co. Ltd. v. City Homes, Inc.*, No. 17-1476, 2018 WL 5080944, at *2 (D. Md. Oct. 18, 2018).

Therefore, for all these reasons, SPS is entitled to protection. The Court should grant SPS's Motion and issue an order protecting SPS from discovery into the matters of examination and document requests detailed above.

## B. Several of Plaintiff's document requests suffer from the same deficiencies.

SPS is also entitled to a protective order because several of the topics seek information that is not discoverable in the first instance.

### 1. Personnel files are not discoverable here.

A number of the matters of examination seek the employment and disciplinary files of SPS personnel. (*See* Ex. A at 8, 14, 20, 34, 40.) When personnel files are sought, courts in this circuit "have balanced the importance of personal privacy and accurate employee evaluations against the countervailing interest in broad discovery that provides each party with the information necessary to present their complete case before the court." *Hemphill v. ARAMARK Corp.*, No. CIV. ELH-12-1584, 2013 WL 1662963, at *2 (D. Md. Apr. 15, 2013). As the *Hemphill* court explained, "[t]his test ***generally favors non-disclosure***," and personnel files "even if relevant, are only discoverable in 'limited circumstances,' such as when the 'need for disclosure is compelling because the information sought is not otherwise readily available.'" *Id.* (quoting *United States*

*EEOC v. McCormick & Schmick's Seafood Rests.*, No. DKC–11–2695, 2012 WL 3563877 (D. Md. Aug. 16, 2012)). "In an unpublished decision, the Fourth Circuit indicated that personnel files are discoverable if they contain information relevant to the subject matter of a case and the need for the information outweighs the fileholders' privacy interests." *McCormick & Schmick's*, 2012 WL 3563877, at *4 (citing *Kirkpatrick v. Raleigh Cnty. Bd. of Educ.*, No. 95–2491, 1996 WL 85122, at *2 (4th Cir. Feb. 29, 1996)).

Here, Plaintiff has not made any effort to detail why or how any information in SPS employee personnel files would be relevant. The employment history of SPS personnel has no bearing on whether SPS properly investigated Plaintiff's dispute and/or was reporting false or inaccurate information. Certainly, Plaintiff has not shown that the need for the information outweighs the privacy interests of the employees. Therefore, the Court should grant SPS protection from discovery into these matters.

**2.     The topics also improperly seek information about unrelated cases.**

Likewise, a number of the matters of examination seek information concerns unrelated lawsuits and/or complaints filed with the Federal Trade Commission ("FTC") and Consumer Financial Protection Bureau ("CFPB"). (*See* Ex. A at 32, 33, 34, 38, 39, 91, 93.) Such information is irrelevant to the facts of this case, and these topics are instead "more akin to a fishing expedition in search of helpful evidence." *Clark v. Creative Hairdressers, Inc.*, No. 2005-0103, 2005 WL 3008511, at *16 (D. Md. Nov. 9, 2005) (holding plaintiff was not entitled to discovery into every complaint filed against defendant in the country for every type of discrimination claim when her claim was based on race discrimination); *see also* Fed. R. Evid. 403 (limiting pattern and practice evidence to ***similar*** events).

As SPS noted in its response to Plaintiff's pending motion to compel, Mr. Alston indicated that this type of information could be utilized in developing a class action against SPS which, of course, has nothing to do with Plaintiff's lawsuit.  Moreover, these matters of examination improperly seek discovery into unproven allegations and for undefined "complaints" that have nothing to do with Plaintiff's case and are wholly irrelevant. *See Mattingly v. Credit Mgmt, LP*, No. 05cv00080, 2005 WL 3271683, at *1 (D. Col. June 7, 2005) (finding discovery of other lawsuits that were unrelated to the FCRA case before it were not relevant).  Finally, the scope of these categories is not proportionate to the needs of this case.  For example, Plaintiff seeks the identities of *all* persons involved the underlying facts of several unrelated cases, *all* lawsuits filed against SPS since 2015 involving a FCRA claim, and *all* complaints filed with the FTC or CFPB since 2015 regarding credit reporting.  Plaintiff has not demonstrated why such extensive discovery is required in this relatively simple case.  Moreover, the burden of preparing a witness to address each and every complaint or lawsuit filed against SPS since 2015 would be "substantial and outweighs any likely benefit."

Therefore, SPS is also entitled to protection from Plaintiff's topics seeking information about unrelated lawsuits and complaints filed against it, as this information is not relevant or proportional to the needs of the case.

3. **Plaintiff has not made a showing of why confidential settlement information should be disclosed here.**

Two matters of examination seek confidential settlement information—specifically dollar figure settlement amounts—from prior, unrelated cases. (*See* Ex. A at 37 and 42.)  Plaintiff has not made *any* effort to explain the relevance of this information, and it appears to be nothing more

than an effort to obtain insight into SPS' legal strategy and its valuation of FCRA cases for leverage in settlement negotiations in the present matter. This Court should not permit this inappropriate discovery. In fact, as SPS noted in its response to Plaintiff's pending motion to compel, Plaintiff herself has taken the position that SPS and the CRAs cannot be liable for one another's conduct and, therefore, she has **_refused to produce any of the settlement agreements_** she has entered into with the CRAs. (*See* Letter from Kevin Williams dated July 20, 2019, copy attached as Exhibit D.) Plaintiff should be held to her own standard.

Furthermore, this information is not discoverable absent Plaintiff meeting a heightened burden, which she has not done. Confidential settlements "benefit society and the parties involved by resolving disputes relatively quickly, with slight judicial intervention, and presumably result in greater satisfaction to the parties," and "[t]he secrecy of a settlement agreement and the contractual rights of the parties thereunder deserve court protection." *Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993). "Although Rule 408 does not bar the discovery of information related to settlement negotiations, the majority of courts require the moving party to satisfy a **_heightened standard of proof_** before granting the discovery of confidential settlement material." *In re Blue Water Land Dev., LLC*, No. 08-00842-8-JRL, 2008 WL 4186895, at *1 (Bankr. E.D.N.C. Sept. 4, 2008) (emphasis added); *see also Equal Rights Ctr. v. Archstone–Smith Trust*, 2008 WL 2717762 (D. Md. 2008) (finding that the party seeking discovery "failed to establish how a wholesale exploration of the settlement process . . . falls within the scope of permissible discovery," and that the court was unwilling to "open the gate to expansive and costly discovery in the absence of a **_specifically articulated bases for disclosure_**" (emphasis added)). Therefore, although the Fourth Circuit has not recognized a settlement "privilege," *see Phillips v. Ottey*, No. CV DKC 14-0980, 2016 WL 6582647, at *3 n.4 (D. Md. Nov. 7, 2016), Plaintiff must still show some particularized

basis for disclosure, which she has not done. Thus, SPS is entitled to protection from discovery into these matters as well.

### 4. Net worth information is not discoverable at this juncture and "pretax profits" are not discoverable at all.

Finally, Plaintiff improperly seeks information regarding SPS' net worth and "pretax profits" for the four previous years. Although **net worth** information may be relevant at some point, courts have recognized that "it might be appropriate to prohibit discovery as to the defendant's net worth until a decision has been rendered on a motion for summary judgment as to whether the punitive damage issue will go to trial." *Tiller v. Hobart Corp.*, 58 F. Supp. 2d 688, 691 (W.D. Va. 1999); *Tharpe v. Lawidjaja*, No. 6:12-CV-0039, 2013 WL 12319912, at *2 (W.D. Va. Oct. 22, 2013) (finding that discovery as to net worth may be had ***if the punitive damages claim survives summary judgment***); *Moore v. DAN Holdings, Inc.*, No. 1:12CV503, 2013 WL 1833557, at *14 (M.D.N.C. Apr. 30, 2013) (discovery of net worth information should not be permitted until the plaintiff has demonstrated some factual basis for its punitive damages claim and, as a result, courts have declined to compel discovery of financial information until the defendant has an opportunity to file a dispositive as to punitive damages). "The ease with which claims for punitive damages can be asserted makes it apparent that such claims ***may result in abuse and harassment if their mere assertion entitles plaintiffs to financial discovery***." *Moore*, 2013 WL 1833557, at *14 (quoting *Moran v. International Playtex, Inc.*, 103 A.D.2d 375, 377, 480 N.Y.S.2d 6, 8 (N.Y. App. Div., 2d Dep't 1984)) (emphasis added).

SPS intends to pursue a motion for summary judgment on punitive damages, and is confident that the Court will agree that this is not a punitive damages case. Plaintiff should only be permitted to discover net worth information of SPS if the claim for punitive damages survives the dispositive motions stage. The Court should, therefore, grant protection at this juncture.

Finally, pretax profits—*i.e.*, gross income—are not discoverable ***at all***.  *See Saunders v. BB&T*, 526 F.3d 142, 154 (4th Cir. 2008) (gathering cases stating that net worth, not net income, can be relevant to punitive damages).  Thus, the Court should grant SPS protection from discovery into SPS' pretax profits.

## CONCLUSION

For the foregoing reasons, the Court should grant SPS' motion for a protective order and limit the length and scope of SPS' 30(b)(6) deposition as detailed herein.

September 19, 2019

Respectfully submitted,

*/s/ Mary S. Diemer*
Mary S. Diemer, Esquire
Federal Bar No. 12328
NELSON, MULLINS, RILEY & SCARBOROUGH LLP
E-Mail:  mary.diemer@nelsonmullins.com
101 Constitution Avenue, N.W., Suite 900
Washington, D.C. 20001
(202) 712-2800
Fax:  (202) 712-2860
*Attorneys for Select Portfolio Servicing, Inc.*