# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

VELMA M. MELTON,

    Plaintiff,

v.

SELECT PORTFOLIO SERVICING, INC.
and STERLING JEWELERS, INC.
*dba Jared-Galleria of Jewelry*,

    Defendants.

Civil Action No. TDC-19-0209

## MEMORANDUM OPINION

Plaintiff Velma M. Melton, a Maryland citizen and resident, filed suit against Defendants Select Portfolio Servicing, Inc. ("SPS"), Sterling Jewelers, Inc. d/b/a Jared-Galleria of Jewelry ("Sterling"), Prestige Financial Services, Inc. ("Prestige"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services, LLC ("Equifax"), and Trans Union, LLC ("Trans Union"), alleging that SPS, Sterling, and Prestige reported inaccurate information to consumer reporting agencies Experian, Equifax, and Trans Union, failed to conduct reasonable investigations into her disputes, and failed to correct their internal records for reporting credit information, in violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (2018). Melton also asserts a common law tort claim of defamation alleging that SPS, Sterling, and Experian published false and misleading information in her credit report. Presently pending before the Court is Sterling's Motion to Dismiss. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be DENIED.

## BACKGROUND

For purposes of deciding this Motion, the Court accepts the facts asserted in Melton's Second Amended Complaint as true. On or about April 13, 2015, Melton, a resident of Hyattsville, Maryland, purchased a piece of jewelry from the Jared-Galleria of Jewelry retail store in Waldorf, Maryland ("the Jared Store"). The Jared Store is owned by Sterling, a Delaware corporation with its principal place of business in Ohio. Sterling has approximately 50 brick-and-mortar retail jewelry stores within Maryland, including the Jared Store. Sterling advertises extensively and directly to Maryland consumers through radio, television, and internet commercial solicitations, and it uses the Maryland courts and judicial system to enforce its contracts with Maryland residents, including by filing approximately 90 lawsuits against Maryland residents in Maryland courts since April 2017.

When Melton bought jewelry from Sterling at the Jared Store, she financed the purchase by opening a line of credit. Specifically, while at the Jared Store, Melton signed a financing contract with Sterling requiring Melton to pay the purchase price plus interest over a period of time. Due to financial difficulties, in January 2017, Melton fell behind on the payments required by the contract. In order to resolve the outstanding payments, Sterling representatives called Melton twice in Maryland to request and arrange a payment. Sterling eventually made a settlement offer to Melton which would allow her to pay off the debt for an amount less than what was due. After Sterling sent a letter to Melton containing that settlement offer in writing, Melton accepted the offer and authorized Sterling to debit the agreed amount from her Navy Federal Credit Union account, located in Maryland. Sterling received the payoff amount from that account on March 29, 2017.

After making this payment in satisfaction of the debt, Melton discovered that Sterling was inaccurately reporting an unpaid charge-off balance for the credit account to consumer reporting agencies Experian, Equifax, and Trans Union ("the CRAs"). In the two years before she filed the present action, Melton repeatedly requested and received copies of her credit report, as compiled and maintained by the CRAs, and saw that each credit report contained errors, including statements that Melton continued to have an unpaid charge-off balance relating to the debt to Sterling. Melton sent letters to the CRAs disputing the inaccuracies regarding the Sterling credit account, including in June 2017 and November 2018. Melton alleges that the CRAs forwarded at least some notice of her disputes to Sterling, but Sterling failed to conduct a reasonable investigation into her disputes or correct its flawed reporting. Instead, Melton received correspondence back from the CRAs stating that Sterling had verified that the status of the credit account was being reported accurately.

Separately, Melton sent at least five dispute letters to Sterling over a two-year period, but Sterling continued to refuse to stop reporting the erroneous charge-off status to the CRAs. As a result, Melton's credit report effectively reflects that she was 180 days delinquent on the Sterling credit account, even though she was only approximately 60 days past due on the debt at the time of the settlement. As a result of these derogatory items appearing on her credit report, Melton was unable to obtain additional credit she sought.

On January 22, 2019, Melton filed the present case. With leave of the Court, Melton filed an Amended Complaint on March 27, 2019 and a Second Amended Complaint on June 21, 2019. The CRAs and Prestige have since been voluntarily dismissed from this action after settling individually with Melton. As relevant here, in Melton's Second Amended Complaint, she alleges that Sterling violated the FCRA, specifically, 15 U.S.C. § 1681s-2(b), and committed the tort of

defamation. Alleging that she has suffered "financial loss, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress," Melton seeks actual damages, statutory damages, punitive damages, attorney's fees, and costs. Second Am. Compl. ¶¶ 106, 134, ECF No. 47.

## DISCUSSION

Sterling has moved for dismissal of the Second Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Sterling asserts that it is not subject to personal jurisdiction in Maryland because Melton has failed to allege sufficient facts demonstrating that the exercise of personal jurisdiction over it comports with either Maryland's long-arm statute or the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Specifically, Sterling asserts that the relevant provisions of Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6–103(b)(1)-(b)(5) (2013), do not authorize personal jurisdiction because the conduct giving rise to Melton's claims occurred entirely outside of Maryland, and because Sterling's contacts with Maryland are "unrelated and outside of the causal link to her FCRA suit." Mot. Dismiss at 2, ECF No. 31-1. Sterling further asserts that the Court lacks specific jurisdiction over it because its Maryland contacts are unrelated to the cause of action, and that it lacks general jurisdiction over it because Maryland is not Sterling's state of incorporation or principal place of business, and Sterling is not otherwise "at home" in Maryland. *Id.* at 5.

### I. Legal Standards

It is the plaintiff's burden to establish personal jurisdiction. *See Mylan Labs. Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). To carry that burden at the pleading stage, the plaintiff need only make a *prima facie* showing that a defendant is properly subject to this Court's

jurisdiction. *Id.* In evaluating the plaintiff's showing, this Court must accept the plaintiff's allegations as true, and it must draw all reasonable inferences and resolve any factual conflicts in the plaintiff's favor. *Id.* The Court may consider evidence outside the pleadings in resolving a Rule 12(b)(2) motion. *CoStar Realty Info., Inc. v. Meissner*, 604 F. Supp. 2d. 757, 763-64 (D. Md. 2009). A district court's exercise of personal jurisdiction over a non-resident defendant must satisfy both the long-arm statute of the state in which the court sits and the Due Process Clause of the Fourteenth Amendment. *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

## II. Due Process Clause

Under the Due Process Clause, personal jurisdiction may be exercised over a party upon a showing that the party has sufficient "minimum contacts" with the forum state such that "maintenance of the suit [in this state] does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In assessing the presence of minimum contacts, courts distinguish between two types of personal jurisdiction: general and specific. General, or all-purpose, jurisdiction offers a path to personal jurisdiction when the suit brings "causes of action arising from dealings entirely distinct from" the defendant's contacts with the forum. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945)). Specific, or case-linked, jurisdiction provides authority "over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

In order for a court to exercise specific personal jurisdiction over a defendant, the defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State," and its "conduct and connection with the forum State" must be "such that [it] should reasonably

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The Court determines if it has specific jurisdiction over an entity by considering "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (quoting *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002)). On the question of whether the suit arises out of or is related to a defendant's contacts with the forum, "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State" such that the suit involves the "adjudication of issues deriving from, or connected with" those contacts. *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017).

Here, it is undisputed that Sterling has numerous, substantial contacts with Maryland. These business activities include operating approximately 50 retail stores in the state; marketing jewelry at these retail locations to Maryland customers; advertising directly and extensively to Maryland consumers through multiple media platforms; offering credit accounts directly to Maryland residents who purchase merchandise in its retail stores; and calling and sending letters to Maryland customers to ensure proper payment of debts incurred pursuant to their financing agreements. Sterling's contacts with Maryland are not "random," "fortuitous," "or attenuated," or due to the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted). These activities plainly show that Sterling has purposely availed itself of the privilege of conducting business in Maryland. *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

In the face of such extensive, in-state activities, Sterling argues that specific jurisdiction does not exist because Melton's claims do not meet the requirement that they are "arising out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n.8. This argument can only be described as frivolous. Melton's claims arise directly from, and are directly related to, Sterling's contacts with Maryland. On April 13, 2015, Sterling sold a custom-made ring to Melton at the Jared Store in Waldorf, Maryland. At the time of that purchase, Sterling and Melton entered into a contractual financing agreement to open a credit account, signed at the Jared Store. Once Melton became delinquent on her payments, Sterling attempted to collect the debt from her by negotiating a settlement of the outstanding balance by calling Melton while she was in Maryland and by sending her a written settlement offer in Maryland. Sterling actually received the settlement payment from Melton's Navy Federal Credit Union account in Maryland. The allegedly false credit report information at issue in the FCRA and defamation claims derives directly from the Maryland financing agreement and the settlement agreement in that Sterling has been reporting to the CRAs that Melton still has not fully paid the debt arising from the Maryland jewelry purchase, while Melton asserts that she reached the settlement agreement satisfying the debt approximately 60 days after it was due.

It would be difficult to imagine a more direct causal link between in-state business transactions and a plaintiff's claims. Although Sterling argues that the specific acts of transmitting allegedly inaccurate credit information to CRAs and failing to conduct a reasonable investigation occurred outside of Maryland, these actions would not have occurred had Sterling not sold jewelry to Melton in Maryland, entered into a financing agreement with Melton in Maryland, and engaged in activities to settle the debt with Melton while she was in Maryland. Thus, Sterling's claim that "not one" of its in-state activities "caused" Melton's FCRA suit is wholly inaccurate. Mot. Dismiss

at 10. The claimed violation of the FCRA and the defamation claim are directly related to, and plainly arise from, Sterling's business activities in Maryland. *See Burger King*, 471 U.S. at 472; *Consulting Eng'rs*, 561 F.3d at 278-79.

Courts have found specific jurisdiction where the connection of the claims to the contacts with the forum state were significantly more attenuated. In *Burger King*, the Court found specific jurisdiction in Florida over a breach of contract claim against a Michigan franchisee who had entered into a franchise agreement relating to a Burger King restaurant in Michigan because the dispute "grew directly out of a contract which had a substantial connection with" Florida, where Burger King's headquarters were located. 471 U.S. at 479. Here, the underlying financing agreement from which the dispute arose was actually executed in Maryland, to pay for goods purchased in Maryland. Similarly, in *Calder v. Jones*, 465 U.S. 790 (1984), the Court found personal jurisdiction in California over a newspaper editor and reporter in Florida whose activities relating to an allegedly defamatory article all occurred in Florida, because the article was intentionally circulated in California. *Id.* at 1487. In *Christian Science Board of Directors of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209 (4th Cir. 2001), the United States Court of Appeals for the Fourth Circuit affirmed a finding of personal jurisdiction in North Carolina over an Arizona resident whose contacts with North Carolina consisted of sending website content from Arizona to a webmaster in North Carolina, where the actual trademark infringement consisted of the posting of offending material by that other individual from a computer in North Carolina. *Id.* at 213, 216-17.

Sterling's reliance on *Bristol-Myers Squibb Company v. Superior Court of California*, 137 S. Ct. 1773 (2017), is unconvincing. In *Bristol-Myers*, the United States Supreme Court determined that certain plaintiffs who were not residents of California had failed to show a

sufficient connection between their product liability claims relating to a prescription medication and the defendant manufacturer's otherwise substantial activities in California. *Id.* at 1781-82. Although the defendant engaged in sales and marketing of the product in California, the plaintiffs had not received the drug at issue in California, ingested the drug in California, or sustained their alleged injuries in California. *Id.* "[A]ll the conduct giving rise to the nonresidents' claims occurred elsewhere." *Id.* at 1782. Notably, however, there was no dispute that there was specific jurisdiction over claims by in-state residents who purchased and used the drug in California. *Id.* at 1778. Here, Melton is a Maryland resident, and the allegedly false information in Melton's credit reports traces back directly to Sterling's sale of jewelry to Melton in Maryland, Sterling's provision to Melton of a credit account in Maryland, Sterling's negotiation of a settlement agreement with Melton while she was in Maryland, and Sterling's receipt of the settlement payment from Melton's Maryland account. Without the jewelry sale and financing agreement executed in Maryland, Sterling would have had no reason to furnish credit information to the CRAs, accurately or otherwise, and Melton would have had no basis to lodge a dispute, which triggered the FCRA's requirement that Sterling conduct an investigation into its reporting. *See* 15 U.S.C. § 1681s-2(a)(1)-(4), (a)(8)(D), (b). Thus, the requirement of "a connection between the forum and the specific claims at issue" is clearly satisfied. *Bristol-Myers*, 137 S. Ct. at 1781.

Finally, the exercise of personal jurisdiction over Sterling is constitutionally reasonable and comports with fair play and substantial justice. Among the factors to consider are the burden on the defendant of litigating in the forum, the interest of the forum state in resolving the dispute, and the plaintiff's interest in convenient and effective relief. *See Consulting Eng'rs Corp.*, 561 F.3d at 279. Where Sterling has affirmatively filed suit in Maryland approximately 90 times, there can be no claim that the burden to litigate in Maryland would be particularly onerous. Maryland

9

has an interest in the integrity of its residents' credit reports, as well as in adjudicating a dispute involving alleged unlawful conduct relating to a corporation's operation of retail stores in Maryland, including the Jared Store at issue in this case. Melton plainly has a strong interest in securing convenient relief in the state in which she lives and in which she purchased the jewelry and entered into the financing agreement. Finally, Sterling does not "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477. The Court therefore finds specific jurisdiction over Sterling for purposes of this case and concludes that the exercise of personal jurisdiction comports with due process. Accordingly, the Court need not address the issue of general jurisdiction.

### III. Long-Arm Statute

The Maryland long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6–103, authorizes the exercise of personal jurisdiction to the limits permitted by the Due Process Clause of the Fourteenth Amendment. *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 710 (4th Cir. 2002); *Beyond Systems, Inc. v. Realtime Gaming Holding Co.*, 878 A.2d 567, 576 (Md. 2005). There may be cases, however, in which personal jurisdiction comports with federal due process but which present factual scenarios outside the scope of the long-arm statute. *Krashes v. White*, 341 A.2d 798, 804 (Md. 1975). *See also Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) ("[T]o the extent that a defendant's activities are covered by the statutory language [of the long-arm statute], the reach of the statute extends to the outermost boundaries of the due process clause.") (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118-19 n.2 (D. Md. 1995)). Thus, the jurisdictional analysis under the long-arm statute does not simply collapse into the due process analysis. *See Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006) (explaining that although the "long arm statute is coextensive with the

limits of personal jurisdiction set by the due process clause," it is not "permissible to [] dispense with analysis under the long-arm statute"). In order to find personal jurisdiction, the Court must find that at least one of the bases for jurisdiction under the Maryland long-arm statute has been satisfied.

The Maryland long-arm statute authorizes jurisdiction over a party who, directly or by an agent:

> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;
>
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
>
> (5) Has an interest in, uses, or possesses real property in the State[.]

Md. Code Ann., Cts. & Jud. Proc. § 6–103(b). "If jurisdiction over a person is based solely upon this section, [a party] may be sued only on a cause of action arising from any act enumerated in this section." *Id.* § 6–103(a). Melton alleges that Sterling is subject to personal jurisdiction in Maryland based on all five of these provisions. The Court finds that, at a minimum, Sterling has engaged in the conduct identified in sections 6–103(b)(1) and 6–103(b)(2).

Melton asserts that this Court has personal jurisdiction over Sterling pursuant to section 6–103(b)(1) because Sterling transacts business in Maryland by operating retail jewelry stores throughout Maryland, including the Jared Store, selling jewelry at those stores to customers such as Melton, and entering into contracts at those stores to finance jewelry purchases by customers such as Melton. Sterling does not, and cannot, dispute Melton's allegations that it transacts business in Maryland regularly and extensively. These business activities also include advertising

directly and extensively to Maryland consumers through multiple media platforms, and calling and sending letters to Maryland customers to ensure proper payment of debts incurred pursuant to their financing agreements. These same activities satisfy the requirement of section 6-103(b)(2) that Sterling contracted to supply goods and services in Maryland, most notably its agreements to sell jewelry and to provide financing services to Melton at the Jared Store.

Thus, Sterling's only argument is that the FCRA and defamation causes of action do not "aris[e] from" such business transactions. Md. Code Ann., Cts. & Jud. Proc. § 6–103(a). This argument is frivolous. For the same reasons that the Court found, in the context of the due process analysis, that Melton's claims "arise out of or relate to" Sterling's Maryland contacts such that specific jurisdiction exists, *Burger King*, 471 U.S. at 472, the Court finds that the long-arm statute's comparable requirement is satisfied. *See supra* part II; *Geelhoed v. Jensen*, 352 A.2d 818, 821 (Md. 1976) (stating that the long-arm and constitutional due process requirements are "interrelated" in that the statute was intended to expand the boundaries of personal jurisdiction "to the limits permitted by the Federal Constitution").

Sterling has identified no authority supporting its position that section 6–103(b)(1) requires that the specific, charged tortious act occur in Maryland. The statute requires only that the cause of action "arise" from a business transaction in Maryland, not that the specific, operative tortious action or contractual violation occur in Maryland. The Court of Appeals of Maryland has routinely found personal jurisdiction pursuant to section 6–103(b)(1) where the defendant engaged in a business transaction in the forum state that was related to, but did not constitute, the specific act forming the basis of the cause of action. For example, in *Novack v. National Hot Rod Association*, 231 A.2d 22 (Md. 1967), the court found personal jurisdiction based on the defendants' inspections of a race track in Maryland where the operative act supporting the cause of action, the act of

sanctioning the race track, occurred in California. *See id.* at 24, 26. *See also Mohamed v. Michael*, 370 A.2d 551, 554 (Md. 1977) (finding personal jurisdiction in Maryland under section 6–103(b)(1) over a Kentucky resident for claims including malicious prosecution in a Kentucky court based on an alleged breach of a contract entered into in Kentucky, where the defendant dispatched his attorneys to negotiate with and threaten the plaintiff in Maryland); *Harris v. Arlen Properties, Inc.*, 260 A.2d. 22, 28 (Md. 1969) (finding personal jurisdiction under section 6–103(b)(1) over an out-of-state real estate development company for breach of a contract entered into outside of Maryland, based on a finding that sending an agent to view a property and apply for a building permit in Maryland constituted the transacting of business relating to the claim). Here, where Sterling has engaged in significantly more concrete business transactions in Maryland than such defendants, and the relevant transactions—the sale of jewelry and the entry of the financing agreement—are equally if not more connected to the operative causes of action, the Court rejects Sterling's claim that jurisdiction is unavailable under section 6–103(b)(1) and 6–103(b)(2). Having found that Melton has satisfied at least one of the requirements for jurisdiction under the Maryland long-arm statute, the Court need not address the remaining long-arm statute arguments.

## CONCLUSION

For the foregoing reasons, Sterling's Motion to Dismiss, ECF No. 31, will be DENIED. A separate Order shall issue.

Date: December 12, 2019

THEODORE D. CHUANG
United States District Judge