# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND
# GREENBELT DIVISION

VELMA M. MELTON,

                Plaintiff,

    v.

SELECT PORTFOLIO SERVICING, INC.,

                Defendant.

Civil Action No.  TDC-19-0209

**Amended Memorandum in Support
of Select Portfolio Servicing's
Motion for Summary Judgment**

## INTRODUCTION

Plaintiff has failed to provide any argument or evidence supporting that SPS failed to conduct a reasonable investigation in this case.  This is an essential element of a claim for negligent violation of the Fair Credit Reporting Act ("FCRA").  Additionally, Plaintiff has not provided any evidence of any willful violation of the FCRA, which is also fatal to her state law defamation claim.  SPS's actions were based on a reasonable interpretation of applicable law and in accordance with industry standards.  Finally, Plaintiff has provided no evidence supporting any damages caused by any action of SPS.  The alleged harm to Plaintiff's credit was entirely caused by her own actions and not because of SPS.  Therefore, the Court should grant SPS's cross-motion for summary judgment and deny Plaintiff's motion for partial summary judgment.

## SPS's STATEMENT OF ADDITIONAL MATERIAL FACTS

Although SPS conferred with counsel for Plaintiff regarding the inclusion of undisputed material facts regarding this case, the parties were unable to reach an agreement.  Therefore, as a supplement to the Joint Statement of Undisputed Facts ("JSUF") filed in this case, SPS is providing the following undisputed material facts in support of its Motion for Summary Judgment for context:

1.      The remaining balance of the Loan was paid off, post-bankruptcy discharge, from the sale of the property on November 30, 2015. (HUD-1 Closing Statement, attached as **Exhibit 17**, J.R. 000440-000441.)[1]  In addition to never reaffirming the Loan, Plaintiff did not make any payments after her discharge until the mortgage was paid solely through the sale of her property.

2.      SPS states that in July 2015, it reported information regarding Plaintiff's account and the Loan for the final time.  (Benight Dep. 48:19-49:4, 123:2-126:12, **Exhibit 4,** J.R. 000103-000104 and 000122-000123.)  SPS ceased active, substantive monthly reporting of the Loan to the credit reporting agencies ("CRAs") after July 2015 due to Plaintiff's discharge in bankruptcy for all personal liability on the Loan.  *Id.* However, SPS did respond to credit disputes submitted by Plaintiff to the CRAs.  (*Id.* at 178:17-179:15, J.R. 000135-000136.)  SPS initially reported the account status with a "13" code meaning "paid or closed account/zero Balance" from 2015 to 2017.  (Expert Report of John Ulzheimer at 14, **Exhibit 5**, J.R. 000219.)  As detailed below, SPS did not "stop" reporting the account as discharged or "begin" reporting it as "open" in 2018 because Plaintiff's personal liability for the account was discharged in bankruptcy during all periods relevant to this case.

3.      SPS does follow the "Metro 2 Manual," as amended and modified from time to time.  However, SPS's expert explained, in light of Plaintiff's Chapter 7 discharge in June 2015, which ended any personal liability she had for the Loan, the correct "Date of Account Information" and the last allowable date for reporting substantive information on the Loan with respect to Plaintiff's discharge of liability is the date she was discharged from personal liability, and not the date of the dispute forms.  (Ulzheimer Rep. at 15, J.R. 000220.)  Under the current Metro 2 Manual, post-discharge information is only reported where the borrower reaffirms the debt and requests the

---

[1] References to "J.R." mean the Joint Record filed with the Court in connection with the parties' summary judgment motions.

furnisher provide information about the account despite the discharge.  (*See id.*)  Therefore, SPS had no "current month's date" because the most recent information SPS had to report was from the discharge in 2015.  (*See* ¶2; Deposition of John Ulzheimer, 122:3-23:3 (8/27/20); attached as **Exhibit 18,** J.R**.** 000475.)

4.      After receiving the disputes referenced in JSUF Paragraph No. 5 from two credit repair companies hired by Ms. Melton, each of the CRAs sent an Automated Consumer Dispute Verification ("ACDV") to SPS, which in turn reviewed the information, made necessary changes, and responded. (*See* ACDVs dated 4/22/2017, 4/25/2017, 8/11/2017, 8/21/2017, attached as **Exhibit 19,** J.R**.** 000519-000530.) Plaintiff does not raise any improprieties in SPS's investigation or response to these 2017 and 2018 disputes.

5.      Responding to JSUF Paragraph Nos. 8 and 9, SPS adds that the information it reported to Experian was correct under the Metro-2 Manual and in accordance with the industry standard.  In SPS's initial report to Experian and the other CRAs in 2015, it included an "E" value in the Customer Information Indicator (CII) field of the account status information indicating the bankruptcy discharge.  (*See, e.g.*, Experian ACDV dated 04-25-2017, attached as **Exhibit 21,** J.R. 000540.)  This code is a "sticky" code, meaning it should stay in place until the furnisher replaces it with a different code or a "removal" value is reported.  There is no evidence supporting any request by SPS to any CRA that this "E" code be removed.  Although SPS continued to report the "E" code to Experian and the other CRAs (who retained the "E" value because SPS had not directed it to be replaced with another value), Experian removed the correct bankruptcy discharge code for an unknown reason sometime prior to 2018.  This is what caused the Experian credit report to start reflecting in 2018 that the account status was open with a balloon payment due in

2036.  SPS asked that the "E" be added in later responses to Plaintiff's dispute letters and inquiries, but Experian never rectified the issue.  (Ulzheimer Dep. 92:5-96:16, Exh.18, J.R. 000467-000468.)

6.      In further answer to JSUF Paragraph No. 10, SPS states SPS was under no obligation to report a discharged account as "disputed" and this would have, in fact, been in contravention of the industry standard.  (Ulzheimer Rep. at 22, J.R. 000227.)  The mere filing of this lawsuit regarding the same discharged account did not impose an obligation on SPS to report the discharged debt as "disputed."

7.      Responding to JUMF Paragraph Nos. 11, 12, and 13 SPS reiterates that it continued to accurately report the discharged account information in accordance with the industry guidelines in response to the March 2019 and April 2019 disputes.  SPS's reporting is in accordance with widely recognized industry standards, not merely its own interpretation of the standards as Plaintiff alleges.  (*See generally* Ulzheimer Rep., J.R. 000206-000232.)

## SUMMARY JUDGMENT STANDARD

Under Rule 56, summary judgment should be granted if "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The presence of a minor factual disagreement is not enough to defeat a properly supported motion for summary judgment, there must be a genuine dispute over a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  The moving party bears the initial burden of proving that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant has made this showing, the non-moving party must respond by demonstrating specific, material facts exist that give rise to a genuine issue for trial. *Id.*

## <u>ARGUMENT</u>

I.  **SPS IS ENTITLED TO SUMMARY JUDGMENT ON ALL FCRA CLAIMS AS THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AS TO SPS'S NEGLIGENCE OR WILLFULNESS OR DAMAGES TO PLAINTIFF**

A.  **Plaintiff Has Not Demonstrated that SPS Failed to Conduct a Reasonable Investigation as a Matter of Law.**

The Fair Credit Reporting Act ("FCRA") does not impose strict liability for inaccuracies in reporting. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 417 (4th Cir. 2001). Rather, the FCRA imposes liability for ***negligent noncompliance*** with the Act, and allows for enhanced penalties for ***willful*** violation." *Id.* (emphasis added); *see also, e.g.*, *Saunders v. Branch Banking and Tr. Co. of VA*, 526 F.3d 142, 149 (4th Cir. 2008). As this Court has repeatedly recognized, plaintiffs must establish the following to show negligent or willful violation of the FCRA: "(1) the plaintiff notified the consumer reporting agency of the disputed information; (2) the consumer reporting agency notified the defendant furnisher of the dispute; and (3) the furnisher then failed to investigate ***and*** modify the inaccurate information." *Meaney v. Nationstar Mortg.*, No. TDC-16-2959, 2018 WL 1014927, at *9 (D. Md. Feb. 21, 2018) (emphasis added). "Generally, whether a furnisher conducted a reasonable investigation is a question of fact for the jury." *Davenport v. Sallie Mae, Inc.*, 124 F. Supp. 3d 574, 581 (D. Md.), *aff'd,* 623 F. App'x 94 (4th Cir. 2015). However, "summary judgment is proper if the reasonableness of the defendant's procedures is beyond question and if the plaintiff has failed to adduce evidence that would tend to prove that the investigation was unreasonable." *Alston v. United Collections Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL 859013, at *7 (D. Md. Mar. 4, 2014).

Here, Plaintiff has failed to provide ***any*** evidence supporting that SPS failed to conduct a reasonable investigation. Instead, Plaintiff contends (contrary to well-established precedent) that

failure to investigate is ***not*** a necessary element of her negligence claim.   This is erroneous, and Plaintiff's failure to cite to any evidence supporting this point is fatal to her claim.

Plaintiff's argument is based on a misreading of the applicable case law and different standards for surviving a motion to dismiss for failure to state a claim and prevailing on a motion for summary judgment.   In *Cole v. Fannie Mae*, for example, the court was addressing a motion to dismiss and found the defendants' argument that the plaintiff "was required to also ***plead*** that a reasonable investigation was not conducted" unavailing.   *Cole v. Fed. Nat'l Mortg. Ass'n*, No. GJH-15-3960, 2017 WL 623465, at *9 (D. Md. Feb. 14, 2017) (further explaining this was not a "predicate for ***alleging*** a violation" (emphasis added)).   In other words, the court was stating the requirements to adequately plead, not prevail as a matter of law, on a § 1681s-2(b) claim.[2]

Moreover, the out-of-circuit opinions of *Drew v. Equifax Info. Servs., LLC*, 690 F.3d 1100, 1107-08 (9th Cir. 2012) and *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 618 (6th Cir. 2012) cited by Plaintiff are not binding precedent and conflict with the applicable standard in this District. The requirement that plaintiffs demonstrate the "furnisher [] failed to investigate ***and*** modify the inaccurate information" has been consistently and repeatedly restated within the District of Maryland and affirmed by the Fourth Circuit. *See, e.g.*, *Meaney,* 2018 WL 1014927, at *9; *Davenport*, 124 F. Supp. 3d at 581.

Despite having ample opportunity to discover any such evidence, Plaintiff has not provided any proof that indicating SPS failed to conduct a reasonable investigation (or even made an argument on this point).   Because Plaintiff has failed to raise the issue or provide a scintilla of

---

[2] A court may find it unnecessary for a plaintiff to plead failure to conduct a reasonable investigation yet require the plaintiff to demonstrate such to prevail on a motion for summary judgment.   Courts routinely apply a similar logical inference and allow § 1681s-2(b) complaints to proceed beyond 12(b)(6) motions where the plaintiff has failed to allege the furnisher was provided notice of the dispute by the CRAs. *See White v. Green Tree Servicing, LLC*, 118 F. Supp. 3d 867, 874 (D. Md. 2015) (collecting cases).   Following discovery, however, when a full and fair opportunity to inquire into and be informed of the actions taken by both CRAs and furnishers has been had, a plaintiff must still demonstrate that the furnisher was notified of the dispute by a CRA to prevail on their claim.

evidence to demonstrate a lack of reasonable investigation as required under § 1681s-2(b), Plaintiff's negligence claim fails as a matter of law and SPS is entitled to summary judgment.

**B.      SPS's Interpretations and Applications of FCRA were Objectively Reasonable and Therefore were not Willful Violations as a Matter of Law.**

To establish a willful violation of FCRA, Plaintiff must show that SPS "knowingly and intentionally committed an act in conscious disregard" of her rights. *Davenport*, 124 F. Supp. 3d at 584. While "summary judgment is 'seldom appropriate' on whether a party possessed a particular state of mind," it is properly granted where evidence of willfulness is totally lacking. *See Dalton*, 257 F.3d at 418. Although the Supreme Court has interpreted "willfulness" to include both knowing and reckless violations, the court created a "safe harbor" by holding that "as a matter of law, a party that relies on a reasonable but erroneous interpretation of the FCRA ***cannot*** be found to have acted recklessly or willfully." *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F. App'x 246, 253 (4th Cir. 2017) (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007)). Therefore, unless the plaintiff shows the defendant's interpretation was objectively unreasonable, she cannot show a willful violation. *Singleton v. Domino's Pizza, LLC*, No. CIV.A. DKC 11-1823, 2012 WL 245965, at *9 (D. Md. Jan. 25, 2012) (noting where a furnisher's interpretation has "a foundation in the statutory text" and a "sufficiently convincing justification," it is "not objectively unreasonable, even if the reviewing court disagrees with it").

Here, the evidence supports a reasonable interpretation by SPS. SPS's position has consistently been that it was required to comply with Consumer Data Industry Association's ("CDIA") published guidelines contained in the Credit Reporting Resource Guide ("CRRG/METRO-2 Guidelines"). The CRRG/METRO-2 Guidelines are the only set of credit reporting standards provided to furnishers. (Ulzheimer Rep. at 13, J.R. 000218). Because the FCRA does not establish standards for how credit events are to be communicated between

furnishers and CRAs, standards established by the CRRG are important tools utilized industry-wide as a benchmark for furnishers reporting events in a consumer's credit history.  (*See* Ulzheimer Rep. at 5; J.R. 000210; and Ulzheimer Dep. 8:6-14:12, J.R. 000446-000448).  While the CRRG-METRO-2 Guidelines are not statutory text, they are the only promulgated industry standards and are relied upon by every furnisher for guidance as to proper reporting of information.  *Id.*

While Plaintiff urges that FCRA is "pellucid" and provides "clear guidance" to report accurate and complete information, FCRA does not definitively state what either "accurate" or "complete" means.  For this, SPS and other furnishers must turn to existing case law.  On this point, courts have routinely held that a report is accurate where it ***factually correct*** and is not materially misleading.  *See, e.g.*, *Saunders*, 526 F.3d at 148.

Based on its reasonable interpretation of its reporting requirements under FCRA, the limitations on its reporting imposed by Plaintiff's bankruptcy discharge, and the evolving CRRG-METRO-2 Guidelines, SPS reported credit information in two different ways. First, in March 2017 through July 2018, SPS reported Plaintiff's account as discharged in bankruptcy, with a balance of zero, with the date of account information as of June 30, 2015. (*See* Ex. 19, J.R. 000519-000530.)  Subsequently, in compliance with updates to the CRRG-METRO-2 Guidelines specifically addressing accounts discharged in bankruptcy, SPS began in 2018 to respond to ACDVs noting the account as discharged in July 2015 and reflecting the pre-discharge account balance, with the date of account information as of the date of discharge.[3]  (*See* ACDVs dated 11/28/2018, 3/19/2019, and 4/5/2019, attached as **Exhibit 23**, J.R. 000548-000551.)

---

[3] As detailed above, SPS did not recognize that Experian had unilaterally and without request removed the CII "E" "sticky" code on the November 2018 ACDV, as the record is undisputed that SPS never requested its removal or reported a replacement for the code. However, on the immediately subsequent dispute, SPS discovered the discrepancy and corrected it.  At all times, however, the information in SPS's responses to Experian were in accordance with the guidelines.  The information reported on the Experian report in late 2018 was solely due to Experian's repeated erroneous deletion of the "E" code.

Despite Plaintiff's assertions, nothing in the text of the FCRA states a furnisher may not accurately report pre-discharge account information with the appropriate notation that the account has been discharged in bankruptcy and that the information is provided as of the date of discharge. Furthermore, cases are not uniform on this point, and there is precedent agreeing with the CRRG-METRO-2 guidance and SPS's position. *See, e.g.*, *Mortimer v. Bank of Am., N.A.*, No. C-12-01959 JCS, 2013 WL 57856, at *6 (N.D. Cal. Jan. 3, 2013); *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1145 (N.D. Cal. 2016). Given the CRRG-METRO-2 Guidelines, lack of statutory definitions, and existing case law supporting its position on this point, SPS's interpretation that it should report the account in the manner it did is objectively reasonable.

Plaintiff next asserts that, due to holdings within other circuits, two lawsuits against SPS and a stipulated order entered into between SPS and the FTC in an unrelated, factually distinguishable matter from decades ago,[4] SPS's interpretation that it was not required to report Plaintiff's account as "disputed" is not objectively reasonable. This contention ignores the specific facts of this case, CRRG-METRO-2 Guidelines, the explicit text of the FCRA, and case law contradicting her position.

First, FCRA makes clear that furnishers are under no obligation to mark accounts as "disputed" in response to frivolous, repetitive disputes or disputes submitted by credit repair companies. 15 U.S.C. § 1681s-2(a)(8)(F)-(G). Here, SPS promptly investigated and properly

---

[4] It is SPS's position that Plaintiff's Exhibits 8-12 (J.R. 000239-000370) are wholly irrelevant, and consist of a complaint and orders from a 2003 proceeding along with two other factually indistinguishable cases involving SPS and its predecessor. First, the 2003 case cited by Plaintiff was resolved by a Consent Order (as modified) expressly stating "entry of the **Modified Order is not an admission of any such allegations of wrongdoing or violation of law**." (*See* Ex. 10, ¶4, J.R. 000299 (emphasis added)). The *Ballenger* action (Ex. 8 at ¶¶19, 33-41, J.R. 000245, 000248-000249) involved a failed deed in lieu and alleged that SPS issued default notices and collection correspondence to borrowers noting the account remained open. SPS will not belabor the inapplicability of these unproven allegations and undefined complaints, which have nothing to do with Plaintiff's case, and notes the irrelevance of these same cases were addressed in the Court's prior discovery rulings. *See* ECF Nos. 87, 90,92, 108, 112 and 118.

responded to six disputes submitted by credit repair companies on a discharged and closed account, prior to any direct contact by Plaintiff with SPS. Each of these disputes were nonspecific in nature and frivolously requested removal of accurately reported information. Based on the repetitious, unfounded disputes submitted by credit repair companies alone, SPS's interpretation that it was not statutorily required to mark Plaintiff's account as disputed in response to letters sent in July and December 2018 was objectively reasonable. *See, e.g.*, *Wood v. Credit One Bank*, 277 F. Supp. 3d 821, 853 (E.D. Va. 2017) ("A furnisher is not liable for inaccurate reporting for merely failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading.")

Reasonableness is further supported by the fact that, in response to each dispute, SPS investigated and sent a response to the return address specified outlining further steps required by the consumer. Plaintiff, however, failed to respond with additional information, request reaffirmance of the debt, or take any other steps to rectify the issue. It was objectively reasonable for SPS to conclude that it had fulfilled its statutory obligations and, based upon the lack of continued effort on behalf of the Plaintiff, the account was no longer being disputed.

Plaintiff's argument that the "scenario outlined by the Fourth, Ninth, Tenth, and Third Circuits" is factually analogous to this case and requires that the account be marked as "disputed" is premised on an inaccurate reading of several of those cases. Importantly, in many of the cited cases, the plaintiff first initiated a dispute ***directly*** with the furnisher.[5] The stipulated order between SPS and the FTC also involved this scenario. This is a key distinction because when the dispute

---

[5] *See, e.g.*, *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1151-52 (9th Cir. 2009) (plaintiff directly disputed account with defendant in February 2003, did not dispute with CRA until May 2004); *Llewellyn v. Allstate Home Loans, Inc.*, 711 F.3d 1173, 1177 (10th Cir. 2013) (plaintiff directly disputed account with Ocwen and CMS prior to disputing the account with CRAs); *Saunders v. Branch Banking and Tr. Co. of VA*, 526 F.3d 142, 145–47 (4th Cir. 2008) (plaintiff directly disputed auto loan and attempted to negotiate terms with lender prior to submitting a dispute to CRAs).

is first lodged with a CRA, some courts hold the furnisher is under no obligation to mark its ACDV responses as disputed. *See Hayworth v. 1st Fin. Bank USA*, No. 1:18-CV-03106-RM-KLM, 2020 WL 5513407, at *2-3 (D. Colo. Sept. 14, 2020); *Collins v. BAC Home Loans Servicing LP*, 912 F. Supp. 2d 997, 1010-11 (D. Colo. 2012).

This is a logical interpretation of the FCRA. § 1681s-2(a) states an affirmative requirement to report direct disputes as disputed in future reporting. § 1681s-2(b), however, provides no mandate to note that an account is disputed in response to a CRA. This is also consistent with precedent supporting that an omission is only actionable where it is materially misleading because when the dispute is first submitted to the CRA, it is already aware of the consumer's dispute and need not be notified again. Furthermore, the current CDIA guidance promulgated in 2017 explicitly states that furnishers ***should not*** send compliance condition codes, including those indicating account information has been disputed, when returning ACDVs to the CRAs. (Ulzheimer Dep. 143:6-45:2, Ex. 18, J.R. 000480). Therefore, under the operative CDIA guidance and existing case law, SPS's interpretation that it was not required to note ACDV responses to disputes first filed with the CRAs as "disputed" accounts was objectively reasonable—***even if*** the Court (or Plaintiff) disagrees.

For all these reasons, SPS's actions fall within the "safe harbor" and cannot, as a matter of law, support willfulness so as to entitle Plaintiff to statutory damages. Therefore, the Court should grant summary judgment in SPS's favor on Plaintiff's claim of willfulness.

### C.   SPS is Also Entitled to Summary Judgment On all FCRA Claims Because There is no Evidence of Damages.

Lastly, summary judgment is appropriate because there is no evidence supporting any damages to the Plaintiff as a result of SPS's alleged inaccurate reporting. Because this is an essential element for a negligent violation claim, summary judgment is appropriate.

If a plaintiff fails to show actual damages, her claims for negligent violation under § 1681o fail as a matter of law and she may only recover statutory damages for a willful violation of the FCRA under § 1681n. *Alston v. Branch Banking & Tr. Co.*, No. GJH-15-3100, 2016 WL 4521651, at *8 (D. Md. Aug. 26, 2016). The Fourth Circuit has noted the damages requirement serves as a "gatekeeping" function to prevent overcompensation of plaintiffs who, in fact, have not suffered meaningful injury. *Davenport*, 124 F. Supp. 3d at 581. Plaintiff must establish that the defendant's alleged violation was the direct cause of damages in the form of loss of credit or other harm. *Flood v. Equifax Info. Servs., LLC*, No. 13-11813, 2014 WL 4243778, at *4 (E.D. Mich. Aug. 26, 2014).

The evidence here supports that any harm to Plaintiff's credit was entirely due to her own extensive and protracted history of untimely payments, unsatisfied accounts, and bankruptcy filings. Plaintiff filed bankruptcy in 2008 and again in 2013. Following her second bankruptcy discharge in 2015, Plaintiff's credit usage and payment history did not improve. For example, a three-bureau credit report obtained on July 1, 2018, prior to when Plaintiff alleges SPS began furnishing inaccurate information, indicates her then-current credit scores as 635 (TransUnion), 554 (Experian), and 633 (Equifax). (*See* Credit Report, attached as **Exhibit 24**, J.R. 000553.) The reasons indicated for her poor credit include the bankruptcy on her credit report, lack of sufficient credit history, and too many delinquent or derogatory accounts. The report also reflected multiple accounts opened after the 2015 discharge that were either in collections, charged off, or delinquent, including an auto loan, two retail credit cards, and a jewelry store account. (*Id.*)[6]

Despite Plaintiff's lengthy, self-inflicted history of poor credit, she erroneously contends SPS's reporting damaged her credit in several respects. However, Plaintiff has not produced any

---

[6] Notably, a similar three-bureau credit report obtained March 14, 2019, during the time Plaintiff claims SPS's reporting damaged her credit, her scores were reported as 664 (Trans Union), 628 (Experian), and 609 (Equifax). (Credit Report dated 3/14/2019, attached as **Exhibit 25**, J.R. 000595.) The only report containing the SPS data, Experian, actually saw a score *increase*.

evidence that SPS's ostensibly inaccurate reporting had any material impact whatsoever on the interest rate she received on any loans. (Ulzheimer Rep. at 20, J.R. 000225).  Moreover, each of the examples of claimed harm to Plaintiff's credit are entirely unsupported by any evidence of causation by SPS:

1.  Plaintiff first contends she was "denied" a mortgage in 2019.  This is directly contradicted by her deposition testimony where she clarified that this "claim" is actually premised on a mortgage officer telling her she needed to improve her credit score in order to obtain financing for a new home. (Melton Dep. 80:16-81:10, J.R. 000022-000023.)  Ultimately, Plaintiff was able to successfully obtain *two* separate mortgage loans in 2019. (*See* Deeds of Trust relating to purchase and refinance of residence located at 1400 Post Lane, Bowie, MD, 20716 on April 12, 2019 and October 25, 2019, respectively and attached as **Exhibit 26** (composite), J.R. 000597 and 000610.) She provides no evidence that any reporting by SPS affected her ability to obtain credit or resulted in her paying a higher rate than she would have otherwise received. (Ulzheimer Rep. at 16-17, 20, Ex. 5, J.R. 000221-000222.)

2.  Plaintiff's next assertion that SPS's reporting caused and adverse decision on her application for an auto loan is also directly rebutted by the evidence.  That lender's decision was premised entirely on its review of her Equifax report, which did not include any information reported by SPS.  Instead, the denial was based on Plaintiff's other "delinquent past or present credit obligations." (Ulzheimer Rep. at 17, Ex. 5, J.R. 000222).

3.  Plaintiff contention that SPS's reporting factored into GM Financial extending a sub-prime auto loan to her is also directly rebutted by the evidence.  Here, again, the report relied on by the lender did not reflect *any* reporting by SPS.  Instead, its decision was based on Plaintiff's reported credit score of 563, approximately 140 points below the national average. (Ulzheimer Rep. at 18, Ex. 5, J.R. 000223).

4.  Plaintiff then argues that she was denied credit at "Bob's Discount Furniture." However, the TransUnion report this lender relied upon likewise did not reflect any reporting by SPS.  While no single item was identified as the sole factor for the denial, the letter gave "serious delinquency" and "too few accounts paid as agreed" as reasons for the denial.  (Ulzheimer Rep. at 19, Ex. 5, J.R. 000224).

5.  Plaintiff's generalized claim of "loss of credit opportunities in the amount of $100,000" is not supported by any evidence either.  Plaintiff relies entirely on a list of inquiries noted on her credit report from July 2016 to November 2017.  However, Plaintiff has not provided any evidence that these inquiries resulted in denials of credit. (Ulzheimer Rep. at 19-20, Ex. 5, J.R. 000224-000225).  Moreover, each of these predated SPS's purported FCRA reporting violation in 2018.

6. Plaintiff next stated she was denied credit for obtaining solar panels but, yet again, provided no documentation supporting this claim. (Melton Dep. 62:16-63:1, Ex. 1, J.R. 000018). Yet again, despite the request for documentation at her deposition, Plaintiff failed to subsequently provide evidence the denial was specifically caused by any action of SPS.

7. Plaintiff's final example of purported damages was a "threat" to maintenance of her security clearance due to credit issues.  During her deposition, however, she testified that she was never denied a security clearance during her decades of federal employment, and has never received any communications indicating she was in danger of losing her clearance.   (Melton Dep. 24:2-28:6, Ex. 1, J.R. 000008-000009).  Moreover, even assuming her credit history is a factor, Plaintiff's long-running credit problems and bankruptcy filings in 2008 and 2013[7] would have placed her clearance at risk long before any purported action by SPS. (Ulzheimer Rep. at 18-19, Ex. 5, J.R. 000223-000224).

Lastly, Plaintiff also claims emotional damages.  While humiliation and distress are cognizable harms under FCRA, the Fourth Circuit has warned that the plaintiff must "reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements" as such claims are "easily susceptible to fictitious and trivial claims."  *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 241 (4th Cir. 2009).  Because of this, courts within the Fourth Circuit have held emotional distress requires "demonstrable" evidence, with conclusory allegations of "embarrassment" insufficient to show a disputed issue of material fact.  *Davenport*, 124 F. Supp. 3d at 581-84 (internal citations omitted). Rather, "evidence that emotional distress caused chest pains and heart palpitations, leading to medical and psychological treatment which included a formal diagnosis . . . as well as necessitated prescription medication" would support actionable emotional distress.  *Id.*

Plaintiff's alleged emotional harm does not meet the high standard required by the Fourth Circuit.  While Plaintiff has testified generally that she was embarrassed when denied credit and

---

[7] *In re Velma Melton*, Case No. 08-bk-00075-SMT (Bankr. D.D.C.)

frustrated with attempting to get issues repaired, at no point did she contend that she suffered any physical manifestations or provide any substantiating evidence.

Therefore, Plaintiff has also failed to show any genuine issue of material fact as to any damages she suffered as a result of SPS's actions.  Plaintiff's credit issues were entirely self-inflicted and even presuming SPS violated the FCRA, none of the purported harm she identifies was caused by SPS.  Rather, Plaintiff's own long and exhaustive history of delinquencies, discharges, and bankruptcies are the cause of her credit denials, increased interest rates, higher costs of credit and embarrassment.  The Court should grant summary judgment as a result.

## II.    SPS IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR AS TO PLAINTIFF'S STATE LAW DEFAMTION CLAIM.

The Court should grant summary judgment to SPS on Plaintiff's state law defamation claim for two reasons.  First, the FCRA preempts any state law credit defamation claims unless Plaintiff can establish SPS reported false information with malice or a willful intent to injure.  *See* 15 U.S.C. §1681h(e).  As noted above, Plaintiff failed to establish SPS violated the FCRA at all, let alone willfully reported false information.  Thus, her state law defamation claim fail for the same reasons the FCRA claims fail.  Second, because there are no viable claims under the FCRA, the Court should decline the exercise of supplemental jurisdiction over her defamation claim.  28 U.S.C. §1367(c)(3).

## III.   IN THE ALTERNATIVE, PLAINTIFF HAS TO FAILED TO DEMONSTRATE SHE IS ENTITLED TO SUMMARY JUDGMENT AS TO HER CLAIMS THAT SPS NEGLIGENTLY OR WILLFULLY VIOLATED THE FCRA.

As detailed above, Plaintiff has failed to establish necessary elements of each of her claims and SPS is therefore entitled to summary judgment.  However, in the event the Court disagrees, there are, at a minimum, genuine issues of material fact warranting denial of Plaintiff's motion.

Contrary to Plaintiff's suggestion, SPS's liability does not hinge on whether Plaintiff received a discharge on her mortgage; that fact is indisputable and SPS has never argued, claimed, or reported otherwise. Rather, Plaintiff must show that there are no genuine issues of fact as to whether she: notified a CRA of her dispute, the CRA forwarded that dispute to SPS, and SPS then either negligently or willfully failed to conduct a reasonable inspection and correct any inaccurate information. *See, e.g.*, *Meaney*, 2018 WL 1014927, at *9; *Davenport*, 124 F. Supp. 3d at 581.

### A.   Issues of Material Fact Exist as to Whether Velma Melton Notified a Credit Reporting Agency of Her Dispute.

The first element Plaintiff must establish is that she notified a CRA of her dispute. *Meaney*, 2018 WL 1014927, at *9. A furnisher's duties under the FCRA are triggered **only** by the **consumer** notifying a CRA of their dispute. While the Fourth Circuit does not appear to have addressed the issue, other circuits have held that investigatory duties under FCRA are **not** triggered when notification of a dispute is provided by a third party, such as a credit repair agency. *See Warner v. Experian Info. Sols., Inc.*, 931 F.3d 917, 921 (9th Cir. 2019); *Klotz v. Trans Union, LLC*, No. 05-4580, 2008 WL 2758445, at *5 (E.D. Pa. July 16, 2008).[8]

Here, the evidence does not establish that Plaintiff corresponded directly with a CRA at any point prior to the March 28, 2019 letter from her counsel to Experian. Plaintiff acknowledged in her deposition that the March 27, 2017 and July 19, 2017 letters to the CRAs were sent by a credit repair company, she had no role in creating or sending them, the signature was not hers, and she had not seen them previously. (Melton Dep. 152:15-157:8, Ex.1, J.R. 000040.) Plaintiff

---

[8] Although these cases address the requirement that a consumer report her dispute directly with a CRA in the context of a CRA's duties under 15 U.S.C. § 1681i, the statutory language contained in § 1681s-2(b)(1) states a furnisher's duties are triggered "after receiving notice pursuant to section 1681i(a)(2)." Furthermore, § 1681-2(a), which details furnishers' duties when a consumer sends the furnisher (rather than a CRA) a dispute, uses the same language, namely that the consumer "shall provide a dispute notice directly" to the furnisher. Therefore, while the supported cases do not directly conclude a furnisher's duties are not triggered by someone other than the consumer notifying a CRA of their dispute, the interrelated nature of CRA and furnisher duties, combined with the statutory text, strongly supports this conclusion in light of the cited cases.

initially testified that the July 3, 2018 letter faxed to TransUnion was sent by her attorney on her behalf, but later changed her testimony to state that the letter was sent by a credit repair company. (Melton Dep. 144:1-46:9, Ex. 1, J.R. 000038-000039.)  Plaintiff also testified that the November 8, 2018 letter was sent by a credit repair company and that she did not recognize the document, participate in drafting it, and had not reviewed or signed it.  (*Id.* at 58:10-59:3, 147:9-48:3, J.R. 000017 and 000039.) Plaintiff's counsel later interrupted the deposition and stated that he wrote and sent the November 8, 2018 letter on her behalf.[9]  While Plaintiff's counsel later provided emails purporting to verify his claim, Plaintiff's testimony, not that of her attorney, is the relevant evidence.   Regardless of these emails, there are at the very least questions as to her level of participation and input in drafting the letter and identifying the items to be disputed. *See Warner,* 931 F.3d at 921; *Klotz,* 2008 WL 2758445, at *5.

Therefore, triable issues of fact remain as to whether Plaintiff, her attorney, or a credit repair company sent the November 8, 2018 dispute letter to Experian and, as a result, whether SPS's duties were triggered.  The letter's contents were similar to the prior letters sent by the credit repair company, the signature is in similar stylized font, it gave Plaintiff's home address as the return address, it did not indicate it was being sent by an attorney on Plaintiff's behalf, and it is written from the first-person perspective of Plaintiff.  Given Plaintiff's admitted history of utilizing credit repair organizations and her testimony that she did not draft, review, or sign many of the letters sent to the CRAs, there are issues of material fact properly reserved for the jury as to whether SPS's response to the November 8, 2018 letter is actionable.  As a result, Plaintiff's motion for summary judgment should be denied.

---

[9] This was an improper attempt to coach Plaintiff during the deposition and is, of course, not evidence of anything considering Plaintiff's testimony directly contradicted counsel's statement.

**B.**      **Issues of Material Fact Exist as to Whether SPS Negligently Failed to Correct Inaccurate Information in Velma Melton's Credit File.**

To establish the third necessary element of her claim, Plaintiff must also prove that the furnisher failed to conduct a reasonable inspection and, if its prior reports were inaccurate, that the furnisher failed to correct the inaccurate reporting. *E.g. Ausar-El v. Barclay Bank Delaware*, No. CIV. PJM 12-0082, 2012 WL 3137151, at *3 (D. Md. July 31, 2012).

To demonstrate a furnisher failed to "modify inaccurate information" requires the Plaintiff to show "*factual* inaccuracy, rather than the existence of disputed legal questions because furnishers of credit information are neither qualified nor obligated to resolve legal questions." *Alston v. Wells Fargo Home Mortg.*, No. TDC-13-3147, 2016 WL 816733, at *10 (D. Md. Feb. 26, 2016) (quoting *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010)). Plaintiff may also meet her burden by proving a furnisher's reporting was incomplete or misleading by showing the furnisher reported "information in such a manner as to create a materially misleading impression." *Saunders*, 526 F.3d at 147-49.

**1.**      **Whether SPS was Negligent in Failing to Annotate the CII Code "E" on the November 8, 2018 ACDV Response is an Issue of Material Fact.**

As detailed above, the evidence produced in this case demonstrates SPS consistently responded to ACDVs generated by Plaintiff's excessive and unwarranted disputes with accurate information in compliance with CDIA guidelines in place at the time of their response. The sole, arguable "inaccuracy" is the omission of the CII code "E" from SPS's November 2018 ACDV response. As detailed above, Plaintiff ignores the fact that the CII code is entered once and is not removed unless SPS replaces this "sticky" code with a different value. She has failed to introduce any evidence supporting her conclusory argument that this coding entry, removed by Experian, was somehow either negligent or willful on SPS's part. In fact, she completely ignores that fact

that her three-agency credit report noted (J.R. 000553-000572) that Experian was the only CRA **not** reporting Plaintiff's bankruptcy discharge (or the bankruptcy proceeding at all) in the "public records" section of her report.  This failure by Experian to correctly report public records of Plaintiff's bankruptcy, combined with its improper removal of, or failure to retain SPS's CII bankruptcy code, means that Experian was negligent rather than any fault or negligence by SPS. At a minimum, however, whether SPS acted negligently or is somehow responsible for Experian's errors is a question for the jury.

Further, SPS's initial responses, beginning on March 27, 2017, were entirely accurate.  The ACDVs to TransUnion, Equifax, and Experian uniformly stated the account in question, as of June 30, 2015, had been discharged in bankruptcy (by use of CII Code "E"), and there was no balance remaining. (Ex. 19, J.R. 000519-000530.) Similarly, ACDV responses to Trans Union and Equifax in August 2017 reported a zero balance, no amount past due, and that the account had been discharged in bankruptcy. (*Id.*)  The evidence does reflect SPS failed to re-mark the CII code "E" on its ACDV response to the dispute letter sent to Experian on November 8, 2018.  However, the evidence supports that in the immediate prior report to Experian, SPS did have the CII code properly marked and re-entered. (*Id.*)  Experian, not SPS, unilaterally and improperly removed the code at some point prior to forwarding Plaintiff's dispute to SPS in November 2018, likely because Experian failed to note public records evidencing Plaintiff's bankruptcy discharge.  The CII code is "sticky," meaning once a furnisher enters the code it should not need to be re-entered each time an ACDV is submitted.  Rather, it should remain on the report ***until the furnisher itself removes it and replaces it with another CII code***. (Ulzheimer Rep. at 15-16, Ex. 5; J.R. 000220-000221; Ulzheimer Dep. 93:18-96:16, Ex. 18, J.R. 000467-000469).  Ultimately, SPS itself later recognized

Experian's omitted "E" code in the CII field and corrected the deficiency in an ACDV response sent on March 19, 2019.  (ACDVs, Ex. 23, J.R. 000548.)

In light of the foregoing, whether SPS's failure to notice that Experian removed the sticky CII Code "E" (which SPS correctly reported prior to Experian's removal) and re-enter it on the November 2018 ACDV was negligent is, at a minimum, a question of fact for the jury—particularly so considering Plaintiff has failed to allege any negligent act, such as failure to conduct a reasonable investigation, that ostensibly led to SPS's omission. A reasonable jury could conclude, for example, that because Experian removed a code SPS previously accurately reported and failed to include the bankruptcy discharge elsewhere in Experian's credit reporting, SPS was not negligent for relying on the policy that it remain unless SPS provided a new value and not noticing Experian had improperly removed it.  Viewing all facts and evidence most favorably to SPS as this court must, there are genuine issues of fact for trial and Plaintiff's motion must be denied.

> **2.    Plaintiff Failed to Establish a Lack of Material Facts on Issue of Whether SPS Was Required to Mark its ACDV Responses as "Disputed."**

Plaintiff next asserts that SPS violated § 1681s-2(b) by failing to mark the account as "disputed."  Under § 1681s-2(b), however, there is no affirmative duty for a furnisher mark an item as disputed.  The supposed "duty to note" identified by Plaintiff lies in § 1681s-2(a), for which there is no standalone private cause of action. *See, e.g.*, *Saunders*, 526 F.3d at 149.  Courts, including the Fourth Circuit, have harmonized these two statutes, finding a private cause of action exists where a consumer notifies the furnisher directly of her dispute ***and*** the furnisher then responds to a dispute submitted through a CRA.  *See id*. at 149-50.  This is logical because if a consumer has directly disputed the debt with the furnisher, CRAs are unaware and the furnisher's

omission of a dispute annotation would be materially misleading. *See id.* However, this same logic does not apply to a situation where the CRA has itself received the dispute and forwarded it to a furnisher. *See Hayworth*, 2020 WL 5513407, at *2-3; *Collins*, 912 F. Supp. 2d at 1010-11.  In this scenario, the CRA is already aware of the dispute and, therefore, the furnisher responding without a dispute code is not materially misleading.  The language of § 1681s-2(a)(3) requiring furnishers to report information as disputed where the "completeness or accuracy of any information furnished by any person to any consumer reporting agency is *disputed to such person by a consumer*," also supports this conclusion. *See Hayworth*, 2020 WL 5513407, at *2-3; *Collins*, 912 F. Supp. 2d at 1010-11. Conversely, § 1681s-2(b), which addresses furnisher responsibilities when responding to a dispute routed through a CRA, contains no such provision.  In fact, for a furnisher to submit an ACDV response stating the account is currently disputed would itself be materially misleading, which is why the CRRG-METRO-2 Guidelines direct all furnishers to abstain from doing so.  (*See* Ulzheimer Dep. 140:4-45:2, Ex. 18, J.R. 000479-000480.)  This is because by returning an ACDV to the CRA, the furnisher is stating it has conducted and concluded an investigation of the dispute and is responding with corrected information; ergo any dispute has been resolved.  (*See id.*)  SPS's alleged failure to mark the account as disputed in response to the disputes routed through the CRAs is not materially misleading and is not, therefore, actionable as a matter of law.

Furthermore, Plaintiff has failed to demonstrate an absence of material facts as to whether any communication sent directly to SPS triggered its responsibility to report her debt as disputed. § 1681s-2(a), which governs such communications, provides two applicable exceptions.  First, § 1681s-2(a)(8)(F) states a furnisher may disregard its statutory duties under FCRA where it receives a dispute it reasonably determines to be frivolous or irrelevant on either of two grounds.  First, if

the consumer failed to provide sufficient information to investigate the disputed information or second, if the dispute is substantially the same as a previously submitted dispute, received either directly or through a CRA, and the furnisher has already fulfilled its investigatory obligations. 15 U.S.C. § 1681s-2(a)(8)(F). The second exception states § 1681s-2(a) is inapplicable if the dispute is prepared on behalf of the consumer by a credit repair organization or is on a form supplied by such an organization. 15 U.S.C.A. § 1681s-2(a)(8)(G).

Plaintiff admitted in her deposition that she hired a credit repair company and that the first dispute letter sent directly to SPS, which followed six dispute letters sent to various CRAs, was authored and sent by a credit repair company. (Melton Dep. 114:21-17:4, Ex. 1, J.R. 000031-000032.). Further, the email sent by Plaintiff's counsel in December 5, 2018 clearly repeats the same demand to investigate Plaintiff's account reporting, an act SPS had correctly performed *ad nauseum* for nearly two years prior to the email. Notwithstanding the repetitive, frivolous nature of these letters, SPS still investigated Plaintiff's file and responded to each letter. (SPS Letters dated 7/26/2018 and 12/17/2018, attached as **Exhibit 27**, J.R. 000630-000632.)

In response to the July 10, 2018 letter, SPS sent notification that further information was necessary to complete the request—namely SPS needed Plaintiff's full name, the address of the property tied to the loan, her SPS account number, her social security number, and a summary of her request or inquiry. (*Id.*) Plaintiff claims to have never received this letter, despite acknowledging the mailing address was correct, and admits she took no action in response. (Melton Dep. 120:18-21:10, Ex. 1, J.R. 000032-000033). Likewise, in response to the December 2018 email, SPS's investigation determined it had ceased reporting new information on Plaintiff's account following her 2015 bankruptcy discharge. SPS's response informed Plaintiff of this and notified her that if she desired SPS to resume reporting, to include updating her account to reflect

her post-discharge payoff, she needed to have the court lift the bankruptcy discharge credit reporting suppression or have her attorney submit a reaffirmation agreement. (Ex. 27, J.R. 000630-000632.)  Plaintiff again claims to have never received this letter and acknowledged that neither she nor her counsel took any of the steps identified by SPS to resolve the issues.  (Melton Dep. 125:12-28:8, Ex. 1, J.R. 000034).

Viewing the facts and evidence most favorably to SPS, Plaintiff has failed to prove she is entitled to judgment as a matter of law on this issue.  First, whether SPS's failure to annotate its ACDV responses as "disputed" before it received any direct communication from Plaintiff herself presents a legal question which, as detailed above, should be resolved in SPS's favor.  Second, because the first direct dispute came from a credit repair company, by statute SPS was not required to acknowledge or respond to the dispute.  Third, while the letter sent by Plaintiff's counsel could potentially trigger SPS's duty to mark future reports as disputed, there is a genuine issue of material fact as to whether SPS was entitled under § 1681s-2(a)(8)(F) to disregard the letter as frivolous or merely repetitive.  At the very least, a jury should be entitled to weigh these facts.

Furthermore, a reasonable jury could find that based on Plaintiff's failure to address or attempt to rectify the issues identified by SPS in its response, SPS could reasonably believe there was no ongoing dispute over the account and, therefore, was under no obligation to report the account as such.  Lastly, even assuming all facts demonstrate SPS was required to report the account as disputed, Plaintiff has not shown that SPS's failure to do so was "materially misleading" as a matter of law considering every CRA had, at the time the dispute letters were sent, already received multiple disputes related to the same account.  Therefore, even assuming SPS is not entitled to summary judgment, at a minimum there are multiple triable issues of material fact as to

whether SPS was even required to report the account as disputed and, even if it was, whether their failure to do so was materially misleading.  Plaintiff's motion should be denied.

### 3.  Plaintiff's Inaccurate Reporting Claim Raises a Disputed Legal Question, not a Factual Inaccuracy Supporting a FCRA Violation.

Finally, Plaintiff's assertion that SPS failed to modify inaccurate information regarding its reporting of a remaining balance, balloon payment, and prior delinquencies is based upon a legal assertion, not a factual inaccuracy.  Therefore, Plaintiff's motion also fails on this pint.

To demonstrate that a furnisher failed to "modify inaccurate information," the plaintiff must show "*factual* inaccuracy, rather than the existence of disputed legal questions because furnishers of credit information are neither qualified nor obligated to resolve legal questions." *Alston v. Wells Fargo*, 2016 WL 816733, at *10 (quoting *Chiang*, 595 F.3d at 38).

On the undisputed facts presented, Plaintiff simply cannot state that SPS's reporting, with the singular exception of its omission of the CII Code "E" on its November 2018 ACDV response to Experian (caused by Experian's unilateral deletion of the code), was ***factually*** inaccurate.  As detailed above, Plaintiff cannot dispute that immediately following her bankruptcy discharge there was a remaining balance of $329,928 on her account, that she had a past due amount of $25,806, or that there was a balloon payment of $220,580 due on maturity.  Those figures are factually accurate as of June 30 and July 10, 2015, the dates of account information SPS repeatedly reported.

Rather than argue SPS's report was factually inaccurate, Plaintiff's motion claims that SPS was "obligated" to report a zero balance on her account, notify Experian the previous information was incomplete, and modify its previous reporting.  Plaintiff's argument hinges not on an assertion that this data was incorrect, but rather on an assertion that FCRA required SPS to report post-discharge sale information on subsequent ACDVs.  In other words, Plaintiff argues that the post-discharge sale of the property rendered SPS's reports misleading.

This constitutes a disputed question of law which should be resolved in SPS's favor.  First, while Plaintiff is correct that some cases suggest that a furnisher must report a zero balance on bankruptcy discharged accounts, this is not a settled matter of law.  In fact, at least one of the cases cited by plaintiff actually supports the exact opposite.  *See, e.g.*, *Mortimer*, 2013 WL 57856, at *6 ("This Court agrees that the FCRA does not prohibit the accurate reporting, after discharge, of debts that were delinquent during the pendency of the bankruptcy action. Whether or not the debt was collectible, the debt existed. Reporting this information is neither inaccurate nor misleading."); *See also Biggs*, 209 F. Supp. 3d at 1145 (collecting cases) (noting the "FCRA does not prohibit the accurate reporting of debts that were delinquent during the pendency of a bankruptcy action, even after those debts have been discharged, so long as the bankruptcy discharge is also reported if and when it occurs. . . . But the debt and its delinquent status still exist, and it is not inaccurate or misleading to report that information to a CRA.")

Additionally, the FTC guidelines and case law cited by Plaintiff were all issued prior to the 2017/2018 changes in CRRG/METRO-2 Guidelines that provide furnishers are **required** to report the discharged account status **as of the date of the bankruptcy petition or discharge**. (Ulzheimer Dep. 104:21-05:9; Ex. 18, J.R. 000470; Ulzheimer Rep. at 14-15, Ex. 5, J.R. 000219-000220). The evidence here supports that from March 2017 through the July 2018 ACDV response to TransUnion, SPS responded with the account as discharged in bankruptcy and with a zero balance. (Ex. 19, J.R. 000519-000530.) Subsequently, in compliance with the newly promulgated CDIA guidelines, SPS reported the account information accurately as it existed on the date of Plaintiff's discharge, to include the balance due. (Ex. 23, J.R. 000548-000551).  SPS properly adhered to the new guidelines and, therefore, acted appropriately as a matter of law.

The same is true for Plaintiff's contention that SPS was obligated to modify its reporting post-discharge to reflect the sale of the property several months later.  SPS has never disputed that the property was sold and the proceeds satisfied the amount due.  Rather, SPS's consistent position has been that, since the sale occurred after the bankruptcy discharge, it was ***required*** to cease all reporting on the account, and Plaintiff was required to reaffirm the debt for SPS to be able to resume reporting <u>on her credit report</u>.  SPS communicated this twice in response to direct disputes, but Plaintiff never took the necessary steps to reaffirm the debt. (Ex. 27, J.R. 000630-000632; Melton Dep. 120:18-21:10, 125:12-28:8, Ex. 1, J.R. 000032-000033.)  As detailed herein, SPS's actions were proper as a matter of law.  This was not a "materially misleading omission" because regardless of whether the property was eventually sold, potential creditors would have seen that as of the date of discharge Plaintiff was no longer personally liable on the debt, regardless of any outstanding balance that remained.

SPS's reporting was appropriate and factually accurate as a matter of law and therefore SPS is entitled to summary judgment.  However, at a minimum the jury should be permitted to consider whether SPS's actions were appropriate.  Plaintiff's motion should, therefore, be denied.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff has failed to establish any genuine issues of material fact for trial on several critical elements of her claims.   Therefore, her claims fail as a matter of law and the Court should grant summary judgment in SPS's favor.   At a minimum there are genuine issues of material fact sufficient to warrant denying Plaintiff's motion.

February 16, 2021

Respectfully submitted,

*/s/ **Mary S. Diemer***

Mary S. Diemer, Esquire
Federal Bar No. 12328
NELSON, MULLINS, RILEY & SCARBOROUGH LLP
E-Mail:  mary.diemer@nelsonmullins.com
101 Constitution Avenue, N.W., Suite 900
Washington, D.C. 20001
(202) 712-2800
Fax:  (202) 712-2860
*Attorneys for Select Portfolio Servicing, Inc.*